Laverna **DRENNEN, Plaintiff-Respondent,**

v.

**Willet W. WREN, a/k/a Wesley Wren, Defendant,**

**M. F. A. Mutual Insurance Company, a corporation, Garnishee-Appellant.**

No. 8637.

Springfield Court of Appeals.

Missouri.

May 23, 1967.

Dearing, Richeson, Weier & Roberts, Samuel Richeson, Hillsboro, for garnishee-appellant.

Roberts & Roberts, Raymond R. Roberts, Farmington, for plaintiff-respondent.

TITUS, Judge.

Plaintiff was a passenger in an automobile which was "rear-ended" by a vehicle belonging to defendant, Willet Wesley Wren, and obtained a $4,000 verdict and judgment in the damage suit that ensued. When that judgment became final, plaintiff caused summons of garnishment to be served on the defendant's insurer, M.F.A. Mutual Insurance Company, the garnishee herein. The instant appeal is by the garnishee from a judgment against it and in favor of plaintiff for the amount of the tort judgment, plus interest and costs.

■ In the garnishment action garnishee disavowed liability under its policy because Wren, until after the tort trial had been concluded, misrepresented he was driving the insured vehicle at the time of the accident and made misrepresentations in his application for insurance. As to garnishee's second assertion plaintiff contended the insurer by its alleged actions or inactions had waived such defense. Concerning defendant's breach of the cooperation condition of the policy, plaintiff argued such a defense is dependent on "whether or not defendant was driving at the time of this collision" and since this fact was directly or inferentially found to exist by reason of the tort judgment it was res judicata in the garnishment suit or garnishee was estopped to deny same. Apparently convinced of the correctness of plaintiff's position, the trial court rejected most all evidence proffered by garnishee. However, as garnishee's offers of proof are in the record we recite and consider the conglomerate evidence (i. e., both that received and that refused but offered) to the extent appropriate. Underwood v. Fortune, Mo. App., 9 S.W.2d 845, 846(2); Zorensky v. Wellston Clothing Co., Mo.App., 223 S.W.2d 851, 855(4).

At the accident scene the driver of the insured vehicle informed observers his name was Willet Wesley Wren and had displayed to the investigating highway patrolman a driver's license issued in that name. Wren, the insured, had given garnishee's representative a recorded statement to the effect he was operating the car when the collision occurred. Shortly before trial (and seemingly after considerable difficulty with arrangements) Wren deposed for plaintiff's counsel and testified concerning his actions and operation of the involved automobile. Defendant detailed his conduct in kicking beer cans at the casualty scene which had resulted in his receipt of a citation for "littering." None of those at the scene, including the patrolman, were personally acquainted with Wren. The beer can-kicking episode and the accident circumstances prompted defendant's counsel (provided by garnishee) to consult with Wren as to the advisability of confessing or admitting liability. With the acquiescence of Wren this was done and the jury was relegated to determine only the amount, if any, of plaintiff's damages.

As Wren had not responded to the "littering" citation, the patrolman arrived at the courthouse for the damage suit trial intent upon arresting defendant on this charge. Defendant's counsel persuaded the trooper to postpone the arrest until after the trial and during a trial recess observed the patrolman and Wren enter the offices of the prosecuting attorney in the courthouse. At the conclusion of the trial and when the jury was deliberating, curiosity overcame defendant's lawyer when he observed the patrolman had departed the courthouse without Wren in tow. Inquiry of the sheriff caused the attorney to confront Wren directly with the doubt then acquired and Wren confessed he had not been driving the vehicle but rather it was being operated by his brother-in-law, Ralph DeClue, who had taken the car with the permission of Wren's wife. DeClue was in the state penitentiary on the date of the trial. Armed with this discovery, counsel hied himself to the courtroom to spread the tidings only to learn the jury had already reached and returned its verdict. Thereafter, counsel informed the court and plaintiff's attorney of the development and advised Wren (later confirmed in writing) garnishee was denying coverage because of

Wren's misrepresentation as to the identity of the driver of the insured automobile. Wren was told to secure personal counsel and admonished he had but fifteen days in which to file a motion for new trial. Garnishee also subsequently advised Wren the insurance contract was considered void due to his application misrepresentations. It is contended Wren had misrepresented two convictions for moving traffic violations when he applied for insurance. Wren did not obtain counsel or file a motion for new trial.

Had the patrolman been permitted, the offer made recited he would have testified that when he confronted Wren on the date of the damage suit trial, he became aware defendant was not the person driving at the time of the accident. A photograph of De-Clue shown him by the sheriff and another look at Wren when the garnishment was tried, convinced the patrolman it was De-Clue and not Wren who was the driver and kicker of beer cans. DeClue's offered testimony he was driving the car was likewise rejected by the trial court. Wren was in court at the trial of the garnishment but refused to testify "because it might tend to incriminate me."

 Preliminary to our consideration we review several applicable rudiments. The automobile insurance policy issued by garnishee to Wren was essentially a contract of indemnity rendering the parties' relationship as that of indemnitor and indemnitee. Kollmeyer v. Willis, Mo.App., 408 S.W.2d 370, 378–379(7, 8). Policy conditions requiring an insured's cooperation have been declared to be binding and enforceable provisions and conditions precedent of liability on the part of the insurer. Compli-

ance therewith, absent excuse or waiver, is essential to permit a recovery on the policy and noncompliance entitles the insurer to deny liability under the policy.[1] "Truthfulness seems to be the keystone of the co-operation arch. The insured must tell his insurer the complete truth concerning the accident * * *" Home Indemnity Co. of New York v. Standard Acc. Ins. Co. of Detroit (9 CCA) 167 F.2d 919, 924. When an insured wilfully and falsely represents to the insurer "the fact of who was driving insured's automobile in any claim made against defendant's insurer, it follows as a matter of law that such conduct constituted an unexcused lack of cooperation by insured in a substantially material respect. And that, if prejudice to insurer need be shown, either to establish the breach or as a prerequisite to the insurer's nonliability, such prejudice appears in the instant case as a matter of law."[2] After a judgment has been obtained by the injured party against the insured, in an action thereafter by the injured party against the insurer, the injured party stands in the legal shoes of the insured with rights no greater or less than the insured would have in a direct action against the insurer, and the insurer may assert any defense against the injured party it could to defend on an action against it by its insured. Meyers v. Smith, supra, 375 S.W.2d at 15(5); Kollmeyer v. Willis, supra, 408 S.W.2d at 379, and cases collected in footnote 15.

 Res judicata is a term used with little discrimination intending different meanings in different situations. 77 C.J.S. Res Judicata, p. 274. The particular cousin of the res judicata generic tribe plaintiff seeks to pull from beneath the family blan-

1. Northwestern Mut. Ins. Co. v. Independence Mut. I. Co., Mo.App., 319 S.W.2d 898, 902–903(1–3); Donlon v. American Motorists Ins. Co., Mo.App., 147 S.W.2d 176, 179(3); Nevil v. Wahl, 228 Mo.App. 49, 65 S.W.2d 123, 127(3); Motorists Mutual Insurance Co. v. Johnson (Ind.) 218 N.E.2d 712, 715(1–4); 7 Am.Jur.2d, Automobile Insurance § 178, pp. 512–513; 8 Appleman, Insur-

ance Law and Practice, § 4782, pp. 136–143.

2. Quisenberry v. Kartsonis, Mo., 297 S.W.2d 450, 454; Meyers v. Smith, Mo., 375 S.W.2d 9, 17(13); Motorists Mutual Insurance Company v. Johnson, supra, 218 N.E.2d at 716(7); 42 C.J.S. Indemnity § 16, p. 593 and § 31, p. 612.

ket to champion her cause is denominated in modern parlance as "collateral estoppel," and is epitomized in the common prescription that where an indemnitor had notice of the suit against the indemnitee and has been afforded the opportunity to appear and defend, the judgment against the indemnitee, if obtained without fraud or collusion, is conclusive against the indemnitor in respect to all questions and facts therein determined,[3] provided they were necessary to the result of the first suit. The Evergreens v. Nunan (2 CCA) 141 F.2d 927, 928(3), 152 A.L.R. 1187. Generalities, as round numbers, often prove false and exceptions which construct the tail often wag the general rule. Proper application of the rule depends on what we consider "facts." Judge Learned Hand in The Evergreens v. Nunan, supra, 141 F.2d at 928–930 wrote: "However, a 'fact' may be of two kinds. It may be one of those facts, upon whose combined occurrence the law raises the duty, or the right, in question; or it may be a fact, from whose existence may be rationally inferred the existence of one of the facts upon whose combined occurrence the law raises the duty, or the right. The first kind of fact, we shall for convenience call an 'ultimate' fact; the second, a 'mediate datum.' 'Ultimate' facts are those which the law makes the occasion for imposing its sanctions * * *. The next question is whether * * * the judgment [in the first suit] conclusively establishes for any purpose any other facts than those which were 'ultimate' in the first suit; that is to say, whether any facts decided in the first which were only 'mediate data' in that suit, are conclusively established in the second suit * * *. The important question here is not therefore whether 'mediate data' in the first suit are as conclusively established as 'ultimate' facts in that suit. On the contrary, we are to decide what are the purposes in the second suit for which anything decided in the first suit—whether 'ultimate facts', or 'mediate data' therein—are conclusively established. Do the 'ultimate' facts, or the 'mediate data' decided in the first suit conclusively establish in the second, anything but facts 'ultimate' in that suit? Do they also establish 'mediate data' in that suit; i. e., premises from which to deduce the existence of any of the facts 'ultimate' in that suit? * * * [W]e do not hesitate to hold that, even assuming arguendo that 'mediate data,' decided in the first suit, conclusively establish facts, 'ultimate' in the second, no fact decided in the first whether 'ultimate' or a 'mediate datum,' conclusively establishes any 'mediate datum' in the second, or anything except a fact 'ultimate' in that suit."

Restatement, Judgments § 68(2), p. 293, says, "A judgment on one cause of action is not conclusive in a subsequent action on a different cause of action[4] as to questions of fact not actually litigated and determined in the first action." Comment p. (1948 Supplement, p. 336): "Evidentiary facts. The rules stated in this Section are applicable to the determination of facts in issue, i. e., those facts upon whose combined occurrence the law raises the duty or the right in question, but not to the determination of merely evidentiary or mediate facts, even though the determination of the facts in issue is dependent upon the determination of the evidentiary or mediate facts."

■■■ "Our Missouri cases refine and enunciate this general principle [supra] in somewhat more restrictive and demanding terms: 'Where one is bound to protect another from liability, he is bound *by the result of the litigation* to which such other is a

---

3. 42 C.J.S. Indemnity § 32a, p. 613; 46 C.J.S. Insurance § 1251, p. 257–261; Finkle v. Western Automobile Ins. Co., 224 Mo.App. 285, 26 S.W.2d 843, 849 (11); Westinghouse Electric Corp. v. J. C. Penney Co. (Fla.App.) 166 So. 2d 211, 216(7); Lake County, etc. v. Massachusetts Bonding & Insurance Co.

(5 CCA) 75 F.2d 6, 8(4, 5); 27 Am.Jur. Indemnity § 35, p. 478.

4. "Causes of action for tort liability and indemnity are separate and distinct." Weeg v. Iowa Mutual Insurance Co. (SD) 141 N.W.2d 913, 916(3).

party, provided he had \* \* \* opportunity to control and manage it.'" Listerman v. Day and Night Plumbing & Heating Serv., Mo.App., 384 S.W.2d 111, 118–119. "[T]he judgment in the prior suit is not conclusive evidence of all matters necessary to be proved by the plaintiff against the indemnitor. Thus the question whether the relation exists which gives a remedy over is of course open to inquiry." Dolph v. Maryland Casualty Co., 303 Mo. 534, 261 S.W. 330, 332. "We recognize that certain issues between insurer and insured, e. g., fraud in the procurement of the policy or *breach of an essential condition*, are not litigable in the main case against the insured in a negligence action \* \* \* and that such issues would survive inter partes an adverse judgment in the main suit." Grain Dealers Mutual Insurance Co. v. Quarrier (Fla.App.) 175 So.2d 83, 86. "While the judgment will be conclusive on him as far as concerns the facts of the rendition of the judgment, its amount, and the cause of action on which it was rendered, it will not determine the question whether he is in fact responsible over; nor will it preclude him [the indemnitor] from setting up any defenses which from the nature of the action or the pleadings he could not have interposed in the first action \* \* \*" 50 C.J.S. Judgments § 811b, pp. 362–363. While prior judgments are conclusive as to all litigated issues "they were not tried to prove nor did the judgments establish that the loss was within the coverage of the policy." Manthey v. American Automobile Ins. Co., 127 Conn. 516, 18 A.2d 397, 399(5). The insurer should have the right to dispute the questions which make it liable on its contract. State ex rel. State Farm Mutual Automobile Insurance Company v. Craig, Mo.App., 364 S.W.2d 343, 347, 95 A.L.R.2d 1321. "The rule has always been regarded as well settled, from the earliest authorities down to the present time, that the judgment \* \* \* is not conclusive of any matter which was incidentally cognizable in that action, or which came collaterally in question, nor of any matter to be inferred by argument and construction from the judgment. The estoppel of a judgment extends only to the question directly involved in the issue, and not to any incidental or collateral matter, though it may have arisen and been passed upon. \* \* \*" 2 Black on Judgments (2d Ed.) § 611, p. 928. "It must be kept in mind that this present action is not based upon tort \* \* \* but upon contract, and garnishee's liability, if any, is fixed by the contract (insurance policy) \* \* \*. The liability of the defendant (insured) for damages has been fixed and becomes final by the judgment in the original suit, but the liability of the insurer on its contract presents an entirely different issue, and one which must be decided by the provisions of the contract of insurance." Perkins v. Becker, 236 Mo.App. 786, 157 S.W.2d 550, 552, 553(3).[5]

 An oversimplified division of the application of the res judicata doctrine concerns, first, the effect of the judgment upon the cause of action on which the judgment is predicated and, second, the effect of that judgment upon a subsequent dispute between the parties, or those in privity, on a different cause of action. In the first instance if the judgment is for the plaintiff it concludes the cause of action by *merger*, i.e., the cause of action terminates by merging in the judgment; if the judgment is for the defendant the cause of action ends because the judgment is effective as a *bar*; and in either case it matters not what facts were or might have been litigated or that no issues were litigated. In the second division, supra, the judgment in the first

5. Also see Turgeon v. Shelby Mutual Plate Glass and Casualty Co. (D.C.Conn.) 127 F.Supp. 46–47(1); Daniel v. State Farm Mut. Ins. Co., 233 Mo.App. 1081, 130 S.W.2d 244, 248; 1 Freeman on Judgments 5th Ed. § 450, pp. 991–994; Restatement, Judgments, § 107g, p. 517; East v. Fields, 42 Wash.2d 924, 259 P.2d 639; Annotation: Judgment—Conclusiveness Against Vouchee—Limitations, 140 A.L.R., pp. 1123–1126; State Farm Mutual Automobile Insurance Company v. Coughran, 303 U.S. 485, 493(3), 58 S.Ct. 670, 82 L.Ed. 970.

suit does not extinguish the second cause of action by either merger or bar, but may be effective, through collateral estoppel, to conclude the parties as to facts and matters actually contested and litigated in the first action.[6] In the case now before us the first judgment is conclusive on the plaintiff and defendant, and hence the garnishee, as to defendant's liability to plaintiff on the tort cause of action in the amount of the verdict rendered. Nevertheless, the judgment in the tort action is not conclusive on the parties in the garnishment suit as to facts not actually litigated in the first action or to facts that were merely evidentiary or mediate datum inferentially involved in the first. The issue of garnishee's liability, if any, on the contract (insurance policy) was not litigated in the first suit. Whether or not defendant obtained the policy through misrepresentation or violated the cooperation conditions of the contract were not issues in nor determined in the damage suit or concluded by the tort judgment. Also, whether defendant or DeClue was the operator of the insured automobile at the time of collision was not conclusively determined in the damage suit in so far as such fact is relevant to the garnishment issues. The expediency afforded litigation and the obvious advantages inuring to courts through the dispatch and speedy determination of causes by consent judgments or admissions of liability, should not be discouraged by holding that every fact concerned in the first suit be conclusively established between the parties in all future suits simply because the fact was necessary to the result. The Evergreens v. Nunan, supra, 141 F.2d at 929; 39 Iowa Law Review No. 2, Alan N. Polasky—Collateral Estoppel—Effects of Prior Litigation, pp. 217–254.

We are of the opinion the trial court erred in excluding the offered evidence on the apparent misconception the tort judgment was conclusive on the parties in the garnishment action as to all facts inferentially involved in the damage suit and necessary to the result there obtained. What we have of necessity assumed from the offers of proof should in no way suggest how the garnishment issues are to be ultimately resolved. Whether defendant, in fact, breached the contract or obtained the policy through misrepresentation so as to relieve garnishee of liability, will be for determination by the fact trier upon the new trial of the garnishment case.

■■■■ Respondent filed a motion to dismiss the appeal for appellant's alleged failure to comply with V.A.M.R. 83.05(c) by claiming appellant's Statement of Facts in its brief omitted all references to the pleadings and respondent's evidence. The rule requires only a "statement of facts *relevant to the questions presented for determination.*" As appellant admits the sufficiency of the pleadings (i.e., plaintiff's interrogatories, garnishee's answer thereto, plaintiff's denial of garnishee's answers, and the reply to the denial) and plaintiff's evidence to make justiciable issues in the garnishment action, we do not deem it was necessary for appellant to relate these matters in its brief under Statement of Facts because these items were not concerned with "the question presented for determination." Accordingly, respondent's motion to dismiss is overruled and denied and the cause is ordered reversed and remanded for a new trial.

STONE, P. J., and HOGAN, J., concur.

**6.** Caterpillar Tractor Co. v. International Harvester Co. (3 CCA) 120 F.2d 82, 84, footnote 4, 139 A.L.R. 1; Restatement, Judgments, § 45, pp. 174–178; 56 Harvard Law Review No. 1, Austin Wakeman Scott—Collateral Estoppel by Judgment, pp. 1–29; 30A Am.Jur. Judgments § 373, pp. 418–421.