# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-1406

_____

| | |
|---|---|
| Gyorgy Nyari, | * |
| | * |
| Appellant, | * |
| | * |
| | * Appeal from the United States |
| v. | * District Court for the |
| | * District of Minnesota. |
| Janet A. Napolitano, Secretary of | * |
| Department of Homeland Security; | * |
| Eric H. Holder, Jr., Attorney General; | * |
| Michael Aytes, Acting Director, | * |
| United States Citizenship & | * |
| Immigration Services; Denise Frazier, | * |
| District Director, United States | * |
| Citizenship & Immigration Services; | * |
| United States Citizenship and | * |
| Immigration Services,[1] | * |
| | * |
| Appellees. | * |

_____

Submitted: November 11, 2008
Filed: April 13, 2009

_____

_____

[1]Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Secretary of Department of Homeland Security Janet A. Napolitano, is automatically substituted for Michael Chertoff; Attorney General Eric H. Holder, Jr., is automatically substituted for Michael B. Mukasey; and Acting Director, United States Citizenship & Immigration Services Michael Aytes, is automatically substituted for Emilio Gonzales, as Appellees.

Before MELLOY, BOWMAN, and SMITH, Circuit Judges.

_____

SMITH, Circuit Judge.

Gyorgy Nyari, a native of Hungary and a lawful permanent resident of the United States, sought review of the denial of his application for naturalization in district court. The court granted the government's motion for summary judgment on the ground that Nyari failed to establish that he is a person of good moral character as required by 8 U.S.C. § 1427(a). We reverse.

## I. *Background*

Gyorgy Nyari immigrated from Hungary to Rochester, Minnesota, as a political refugee in 1983 and became a lawful permanent resident of the United States that year. Nyari's wife and two daughters accompanied him. Nyari and his wife divorced in 1984, but Nyari moved back in with his ex-wife and their daughters in 1985. The family subsequently relocated to Virginia Beach, Virginia, and the couple's relationship again deteriorated in 1988.

In November 1988, the Virginia Beach Department of Social Services (DSS) commenced an investigation into the welfare of Nyari's daughters, then ages 11 and 8. According to Nyari, his ex-wife had accused him of sexually abusing their daughters. Nyari's daughters also accused him of sexual abuse, but they have since recanted and claimed that they were pressured into making the allegations when they were children.

In January 1989, DSS informed Nyari that it had deemed the sexual abuse allegations "founded" and that his name would be listed in Virginia's child abuse and neglect central registry. The disposition was upheld on appeal, and Nyari petitioned for a hearing. But Nyari failed to appear at the hearing, and DSS deemed his appeal abandoned. No criminal charges were brought against Nyari with respect to the sexual

abuse allegations. Nyari was awarded custody of his older daughter in January 1992, and they returned to Rochester the following June.

Nyari first applied for naturalization in January 1989. The former Immigration and Naturalization Service (INS) informed Nyari that it would recommend the denial of his application because he was listed in Virginia's central registry. Nyari withdrew his application. Nyari again applied for naturalization in September 1995. The INS requested that Nyari provide evidence establishing that he was not listed in the central registry, and, when Nyari failed to submit the requested information, the INS denied his application.

Nyari filed his current application for naturalization in March 2003. In April 2005, the Citizenship and Immigration Service (CIS) denied Nyari's application, finding that he failed to demonstrate that he was a person of good moral character because he was listed in the central registry. Nyari sought administrative review of the denial of his application, filing a letter from his younger daughter dated October 1999 and sworn statements from both of his daughters recanting their prior allegations of sexual abuse. The CIS sustained the denial of Nyari's application.

Nyari filed a petition for review of the CIS's denial of his naturalization application in district court pursuant to 8 U.S.C. § 1421(c), and he and the government brought cross motions for summary judgment. In support of his motion for summary judgment, Nyari submitted affidavits of his daughters in which they again recanted their sexual abuse allegations. Nyari also submitted an affidavit in which he denied sexually abusing his daughters and affidavits of a friend and a coworker attesting to his good moral character.

Granting the government's motion for summary judgment and denying Nyari's motion for summary judgment, the district court dismissed Nyari's petition. The court concluded that Nyari failed to meet his burden of establishing that he is a person of

good moral character because he was listed in the central registry at the time he filed his naturalization application.[2] The court expressed concern that the record did not reflect the underlying facts and circumstances on which DSS based its determination that the sexual abuse allegations were founded. But, finding that this deficiency in the record was largely due to Nyari's failure to appear at the DSS hearing in 1989, the court deemed Nyari's failure to pursue his appeal to be "the equivalent of a 'no contest.'"

## II. *Discussion*

An applicant for naturalization "bear[s] the burden of establishing by a preponderance of the evidence that he or she meets all of the requirements for naturalization." 8 C.F.R. § 316.2(b); *see also Berenyi v. Dist. Dir., INS*, 385 U.S. 630, 637 (1967). Under 8 U.S.C. § 1427(a), an applicant for naturalization must meet the following requirements:

> No person . . . shall be naturalized unless such applicant, (1) immediately preceding the date of filing his application for naturalization has resided continuously, after being lawfully admitted for permanent residence, within the United States for at least five years . . . , (2) has resided continuously within the United States from the date of the application up to the time of admission to citizenship, and (3) during all the periods referred to in this subsection has been and still is a person of good moral character, attached to the principles of the Constitution of the United States, and well disposed to the good order and happiness of the United States.

Certain classes of individuals are barred from establishing the good moral character requirement of § 1427(a), *see id.* § 1101(f); 8 C.F.R. § 316.10(b)(1)-(2), but Nyari does not fall into one of these classes. His absence from one of the enumerated

---

[2]The parties agree that Nyari's name was removed from the central registry in October 2007.

classes does "not preclude a finding that for other reasons [he] is or was not of good moral character." 8 U.S.C. § 1101(f). An applicant's moral character is evaluated "on a case-by-case basis taking into account . . . the standards of the average citizen in the community of residence." 8 C.F.R. § 316.10(a)(2).

The statutory period for assessing the moral character of a naturalization applicant begins five years immediately preceding the date the application is filed. 8 U.S.C. § 1427(a). But 8 U.S.C. § 1427(e) provides that "the applicant's conduct and acts at any time prior to that period" may be considered "[i]n determining whether the applicant has sustained the burden of establishing good moral character." More specifically, an applicant's "conduct and acts" prior to the statutory period may be considered for purposes of the moral character determination "if the conduct of the applicant during the statutory period does not reflect that there has been reform of character from an earlier period or if the earlier conduct and acts appear relevant to a determination of the applicant's present moral character." 8 C.F.R. § 316.10(a)(2). Therefore, an applicant's conduct prior to the statutory period is relevant only to the extent that it reflects on his or her moral character within the statutory period.

A. *Government's Summary Judgment Motion*

We review the district court's grant of the government's motion for summary judgment de novo, viewing the facts in the light most favorable to Nyari and drawing all reasonable inferences in his favor. *McPherson v. O'Reilly Auto., Inc.*, 491 F.3d 726, 730 (8th Cir. 2007). As the moving party, the government "bears the burden of showing both the absence of a genuine issue of material fact and an entitlement to judgment as a matter of law." *Singletary v. Mo. Dep't of Corr.*, 423 F.3d 886, 890 (8th Cir. 2005).

1. *Inclusion of Nyari's Name in the Central Registry*

The parties dispute the import of the inclusion of Nyari's name in the central registry, which was the primary basis for the district court's grant of summary

judgment to the government. Under Virginia law, "[a]ny person who suspects that a child is an abused or neglected child may make a complaint concerning such child" to the Department of Social Services. Va. Code Ann. § 63.2-1510. "Founded" complaints are maintained in the "central registry" of Virginia's child abuse and neglect information system. *Id.* § 63.2-1514(B); 22 Va. Admin. Code § 40-700-10.

The contents of the central registry are not open to the public, but "appropriate disclosure may be made in accordance with Board regulations." Va. Code Ann. § 63.2-1515. The Virginia Court of Appeals has characterized the inclusion of a person's name in the central registry as "an administrative remedy" and has stated that the "administrative proceedings" before the Department of Social Services "are not criminal in nature and are not intended to punish or rehabilitate the abuser." *J.P. v. Carter*, 485 S.E.2d 162, 172 (Va. Ct. App. 1997). The central registry is distinct from Virginia's Sex Offender and Crimes Against Minors Registry. *See, e.g.*, Va. Code Ann. § 9.1-900.

Nyari's name was included in the central registry because DSS determined that the allegations that Nyari had sexually abused his daughters were "founded." It was on this basis that the district court concluded, as a matter of law, that Nyari was not a person of good moral character for purposes of § 1427(a). But 8 U.S.C. § 1421(c) requires a district court to subject a denial of a naturalization application to de novo review, to "make its own findings of fact," and to "conduct a hearing" if requested by the applicant. We are aware of no case law—and the government concedes that there is none—in which a court reviewing a denial of a naturalization application has found that the applicant was not a person of good moral character based on the outcome of a civil administrative proceeding. The district court erred in giving preclusive effect to the DSS determination. A founded sexual abuse allegation does not establish that Nyari committed a sexual offense against his children.

Furthermore, as explained above, the statutory period for assessing the moral character of a naturalization applicant begins five years immediately preceding the date the application is filed. *Id.* § 1427(a). The district court emphasized that Nyari's name was listed in the central registry when he applied for naturalization, but 8 C.F.R. § 316.10(a)(2) indicates that an applicant's "conduct" is the focus of the moral character evaluation. Nyari's "conduct" for purposes of the good moral character requirement consists of his actions underlying the sexual abuse allegations; Nyari's listing in the central registry is not "conduct."

Because the sexual abuse allegations arose more than 14 years prior to the filing of Nyari's application, the determination of DSS may only be considered in evaluating Nyari's moral character if Nyari's "conduct . . . during the statutory period does not reflect that there has been reform of character from an earlier period or if the earlier conduct and acts appear relevant to a determination of [Nyari's] present moral character." *Id.* The district court erred in not considering whether either of those requirements was met.

### 2. *Nyari's Failure To Appear at the Social Services Hearing*

Although the district court acknowledged that the record does not reflect the underlying facts and circumstances on which the DSS's determination was based, it found that this deficiency in the record was largely due to Nyari's failure to appear at the DSS hearing in 1989. The court construed Nyari's failure to pursue his appeal to be "the equivalent of a 'no contest.'" But a nolo contendere plea "is a 'plea by which a defendant does not expressly admit his guilt, but nonetheless waives his right to a trial and authorizes the court for purposes of the case to treat him as if he were guilty.'" *Rawls v. Mabry*, 630 F.2d 654, 659–60 (8th Cir. 1980) (quoting *North*

-7-

*Carolina v. Alford*, 400 U.S. 25, 35 (1970)). Because all of the DSS proceedings were of a civil nature, the court's no contest analogy is inapposite.[3]

### 3. *Recantations of Nyari's Daughters*

Nyari's inclusion in the central registry and his failure to appear at the DSS hearing do not preclude him from demonstrating that he is a person of good moral character. Additionally, in support of his appeal of the CIS's denial of his naturalization application in 2005, Nyari submitted sworn statements from both of his daughters in which they claimed that Nyari had never sexually abused them and that they had been coerced into falsely accusing him. Nyari also submitted a letter from his younger daughter, dated October 14, 1999, in which she denied that Nyari had sexually abused her and claimed that she was pressured by social workers in her school counselor's office into accusing Nyari. Nyari's younger daughter was 19 years old when she wrote the letter and 25 years old when Nyari submitted the letter.

In support of his motion for summary judgment, Nyari submitted affidavits from his daughters in which they again recanted their prior allegations and explained why they had lied when they were young children. Specifically, Nyari's daughters stated that their parents had a very poor relationship at the time, that their mother lied to a social worker about Nyari, and that they were called into a counselor's office at school and pressured into claiming that Nyari had sexually abused them. They emphasized in their affidavits that Nyari is a good father who has never sexually or

---

[3]Furthermore, the record reflects that Nyari has attempted to obtain the record of the sexual abuse investigation. In a letter dated October 25, 2003, Nyari authorized DSS to release all information regarding its investigation as required by the INS. In a subsequent letter to the INS that was carbon copied to Nyari, a DSS representative stated that Nyari's record had been reviewed in order to provide the INS with the "documentation necessary to complete [Nyari's] application for naturalization" and that she was sending the INS certain documents from the record. She also instructed the INS to contact her if further information was needed.

physically abused them. Nyari's own affidavit submitted in support of his motion for summary judgment is consistent with his daughters' recantations.

It is well established that courts should neither weigh evidence nor make credibility determinations when ruling on a motion for summary judgment. *See, e.g.*, *Kenney v. Swift Transp., Inc.*, 347 F.3d 1041, 1044 (8th Cir. 2003). The district court stated that "Nyari's delayed protestations of innocence and the subsequent recantations by Nyari's daughters carry little weight" in light of his failure to contest DSS's conclusion that the sexual abuse allegations were founded.

Assessing evidentiary weight and credibility are not ordinarily consistent with a ruling on a summary judgment motion. We have recognized that summary judgment may be granted when "a party's sudden and unexplained revision of testimony creates an issue of fact where none existed before," *Wilson v. Westinghouse Elec. Corp.*, 838 F.2d 286, 289 (8th Cir. 1988), and when a party creates "sham issues" by contradicting previous testimony, *Camfield Tires, Inc. v. Michelin Tire Corp.*, 719 F.2d 1361, 1366 (8th Cir. 1983). But Nyari presented the district court with evidence that his daughters long ago recanted their sexual abuse allegations and have consistently explained that they made the accusations under pressure. Indeed, the multiple recantations of Nyari's daughters are consistent with one another and set forth a plausible justification for why they falsely accused Nyari when they were young children. Their recantations create a genuine issue of material fact as to whether Nyari sexually abused them.

For the foregoing reasons, we hold that the district court erred in granting the government's motion for summary judgment.

B. *Nyari's Summary Judgment Motion*

Finally, Nyari argues that the district court erred in denying his motion for summary judgment. A district court's denial of a summary judgment motion is

generally not appealable. *Ambrose v. Young*, 474 F.3d 1070, 1074 (8th Cir. 2007). But when an appeal from an order denying an appellant's motion for summary judgment is raised with an appeal from an order granting an appellee's cross motion for summary judgment, a court "may enter an order directing that summary judgment be granted in favor of the appellant if the record presents no genuine issue of material fact and the appellant is entitled to judgment as a matter of law." *Hawkeye Nat'l Life Ins. Co. v. AVIS Indus. Corp.*, 122 F.3d 490, 496 (8th Cir. 1997). On review of the district court's denial of Nyari's summary judgment motion, we view the facts in the light most favorable to the government and draw all reasonable inferences in the government's favor. *Mettler v. Whitledge*, 165 F.3d 1197, 1200 (8th Cir. 1999).

The DSS determination that the sexual abuse allegations against Nyari were founded, while not sufficient to support summary judgment for the government, does preclude granting summary judgment in Nyari's favor. The district court could find that Nyari is not a person of good moral character if it determines that he sexually abused his daughters and that his "conduct . . . during the statutory period does not reflect that there has been reform of character from an earlier period or if the earlier conduct and acts appear relevant to a determination of [his] present moral character." 8 C.F.R. § 316.10(a)(2). We hold that the district court did not err in denying Nyari's motion for summary judgment.

### III. *Conclusion*

Accordingly, we reverse the judgment of the district court and remand for further proceedings.

_____