# United States Court of Appeals
### For the Eighth Circuit

_____

No. 13-1307

_____

United Fire & Casualty Company

*Plaintiff - Appellant*

v.

Titan Contractors Service, Inc.

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: January 14, 2014
Filed: May 13, 2014

_____

Before GRUENDER, BRIGHT, and MELLOY, Circuit Judges.

_____

GRUENDER, Circuit Judge.

United Fire and Casualty Company ("United") brought this declaratory judgment action against Titan Contractors Services, Inc. ("Titan"), and Titan counterclaimed for declaratory relief. United appeals the district court's grant of summary judgment in favor of Titan on United's claim and Titan's counterclaim, as

well as the district court's denial of United's motion for summary judgment. For the reasons discussed below, we vacate and remand.

## I. Background

Titan provides construction-cleanup services, including cleaning and sealing concrete floors. At all relevant times, Titan was insured under a commercial general liability insurance policy provided by United. The policy excluded from coverage "'[b]odily injury' or 'property damage' which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of 'pollutants' at any time." The policy defines "pollutant" as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste." This provision, typically denominated the "absolute pollution exclusion," appears in many commercial general liability insurance policies. *See* William P. Shelley & Richard C. Mason, *Application of the Absolute Pollution Exclusion to Toxic Tort Claims: Will Courts Choose Policy Construction or Deconstruction?*, 33 Tort & Ins. L.J. 749, 752-53 & n.13 (1998).

In March 2009, three women brought negligence claims against Titan in Illinois state court. They alleged that on April 20, 2007, Titan applied TIAH, an acrylic concrete sealant, to the floor in a portion of the office park in which they worked. Because Titan failed to ventilate its worksite properly, the TIAH infiltrated the women's office. They were exposed to TIAH and developed significant physical ailments, including acute chemically-induced asthma and vocal cord dysfunction.

Titan gave notice and tendered defense of the lawsuit to United pursuant to the policy. United commenced defense of Titan against the negligence claims subject to a reservation of rights. United then filed this action seeking a declaration that it did not owe a duty to defend or indemnify Titan against the pending state-court lawsuit because the policy's absolute pollution exclusion barred coverage for the claims

raised in the lawsuit. United also sought recovery of the costs it had expended thus far defending the state-court lawsuit. Titan counterclaimed, seeking a declaration that United owes duties to defend and indemnify it against the state-court lawsuit. The parties filed cross-motions for summary judgment. The district court granted Titan's motion and denied United's, entering a judgment declaring that United owes a duty to defend and indemnify Titan against the state-court lawsuit. The district court reasoned that TIAH did not constitute a "pollutant" and, thus, that the absolute pollution exclusion did not apply to exclude coverage for the claims raised in the state-court lawsuit. United timely appealed both the grant of summary judgment in favor of Titan and the denial of its own motion for summary judgment.

## II. Discussion

We review both the district court's grant of summary judgment and its interpretation of the insurance policy *de novo*. *Bethel v. Darwin Select Ins. Co.*, 735 F.3d 1035, 1038 (8th Cir. 2013). Summary judgment is proper only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The parties agree that Missouri substantive law governs this diversity action. As such, "we are bound by the decisions of the Supreme Court of Missouri. If the Supreme Court of Missouri has not addressed an issue, we must predict how the court would rule, and we follow decisions from the intermediate state courts when they are the best evidence of Missouri law." *Dannix Painting, LLC v. Sherwin-Williams Co.*, 732 F.3d 902, 905 (8th Cir. 2013) (quoting *Kingman v. Dillard's Inc.*, 643 F.3d 607, 615 (8th Cir. 2011)).

Under Missouri law, an insurer owes a duty to defend its insured whenever the complaint in the underlying lawsuit "alleges facts that give rise to a claim potentially within the policy's coverage." *McCormack Baron Mgmt. Servs., Inc. v. Am. Guar. & Liab. Ins. Co.*, 989 S.W.2d 168, 170 (Mo. banc 1999). "The duty to defend is determined by comparing the language of the insurance policy with the allegations

in the [underlying] complaint." *Id.* The parties agree that the claims raised in the state-court lawsuit fall within the general inclusionary terms of the policy. So here, United owes Titan a duty to defend so long as those claims potentially fall outside the scope of the absolute pollution exclusion. Because an insurer's duty to defend is broader than its duty to indemnify, *id.*, if United owes no duty to defend, it likewise owes no duty to indemnify, *Trainwreck West Inc. v. Burlington Ins. Co.*, 235 S.W.3d 33, 44 (Mo. Ct. App. 2007).

The interpretation of an insurance policy is a question of law. *Schmitz v. Great Am. Assurance Co.*, 337 S.W.3d 700, 705 (Mo. banc 2011). If the policy language is unambiguous, "the contract will be enforced as written." *Rice v. Shelter Mut. Ins. Co.*, 301 S.W.3d 43, 47 (Mo. banc 2009) (quotation omitted). But if the policy language is ambiguous, it will be construed against the insurer. *Id.* "An ambiguity exists when there is duplicity, indistinctness, or uncertainty in the meaning of the language in the policy. Language is ambiguous if it is reasonably open to different constructions." *Jones v. Mid-Century Ins. Co.*, 287 S.W.3d 687, 690 (Mo. banc 2009) (quotation omitted). When interpreting insurance policies, Missouri courts "appl[y] the meaning [that] would be attached [to the policy] by an ordinary person of average understanding if purchasing insurance." *Burns v. Smith*, 303 S.W.3d 505, 509 (Mo. banc 2010) (quotation omitted).

This case turns, then, on whether an ordinary person of average understanding purchasing the policy would consider TIAH to fall unambiguously within the policy's definition of "pollutant." We conclude that she would. The policy defines "pollutant" to include an "irritant," but it does not define the latter term. When a term "is not defined in the policy, . . . it is necessary to use the ordinary meaning of the word, as set forth in the dictionary." *Schmitz*, 337 S.W.3d at 708; *see also Burns*, 303 S.W.3d at 512 n.5 ("This Court looked to the dictionary definition . . . to determine what the ordinary layperson would interpret as the meaning of that word."). An irritant is "something that irritates," that is, that "produce[s] irritation." Webster's

Third New International Dictionary 1197 (2002). There can be little doubt that TIAH falls within that definition. TIAH's material safety data sheet[1] warns that the substance "may produce irritation to the nose, throat, respiratory tract, and other mucous membranes"; may be "irritating" to the eyes and skin; is "toxic"; and can cause serious injury, including "permanent brain and nervous system damage." Similarly, promotional materials from TIAH's manufacturer caution that TIAH can "cause irritation of the eyes and/or skin" and that TIAH vapors might "result in transient central nervous system depression." This evidence shows clearly that TIAH produces irritation. An ordinary insurance purchaser would conclude from this that TIAH constitutes an irritant and, in turn, a pollutant under the absolute pollution exclusion. That conclusion is buttressed by the fact that the federal Clean Air Act classifies xylene, one of TIAH's constituent chemicals, as a "pollutant." *See* 42 U.S.C. § 7412(b)(1). While perhaps not dispositive, federal statutory classification of a substance as a pollutant can put an insurance purchaser on notice that the substance might trigger the absolute pollution exclusion. *See Porterfield v. Audubon Indem. Co.*, 856 So.2d 789, 805 (Ala. 2002); *Quadrant Corp. v. Am. States Ins. Co.*, 110 P.3d 733, 741-42 (Wash. 2005). Thus, TIAH unambiguously constitutes a pollutant under the absolute pollution exclusion.

Titan does not seriously contest the foregoing analysis but instead contends that such strict fidelity to the policy's text conflicts with the Missouri Court of Appeals's decision in *Hocker Oil Co. v. Barker-Phillips-Jackson, Inc.*, 997 S.W.2d 510 (Mo. Ct. App. 1999). In *Hocker Oil*, 2,000 gallons of gasoline leaked from the insured's gas station onto adjacent property. *Id.* at 512. The court found it to be ambiguous whether gasoline constituted a pollutant under the insurance policy's pollution exclusion and thus construed the provision against the insurer. *Id.* at 518.

---

[1]Federal law requires manufacturers to furnish material safety data sheets identifying the potential risks of all "hazardous chemicals" that they produce or import. 29 C.F.R. § 1910.1200(g). Similarly, employers must "have a safety data sheet in the workplace for each hazardous chemical [that] they use." *Id.*

The insurer had issued the policy through its "Gasoline Department," *id.* at 515, and the insured's business consisted entirely of operating gas stations, *id.* at 514. The court observed that "it would be an oddity for an insurance company to sell a liability policy to a gas station that would specifically exclude that insured's major source of liability." *Id.* at 518. As such, the insured reasonably could have concluded that gasoline was a "product it sells" rather than a pollutant. *Id.* Titan seeks to analogize this case to *Hocker Oil*, claiming that TIAH is a "product it sells" and thus that it reasonably could conclude that TIAH is not a pollutant.

We reject Titan's reliance on *Hocker Oil* for two reasons. First, we doubt that the Supreme Court of Missouri would apply *Hocker Oil* in the manner urged by Titan. As we recently observed, *Hocker Oil*'s approach "was a minority position when adopted, has been almost uniformly rejected by appellate courts in other jurisdictions, and has not since been cited or referred to favorably by the Supreme Court of Missouri." *Doe Run. Res. Corp. v. Lexington Ins. Co.*, 719 F.3d 868, 875 (8th Cir. 2013) (applying Missouri law and rejecting insured's reliance on *Hocker Oil*). Indeed, not even Missouri's intermediate appellate courts have relied on this aspect of *Hocker Oil* in the fifteen years since the case was decided. This should come as no surprise, since *Hocker Oil* seems out of step with Missouri's deeply-entrenched rule that a court "may not 'create an ambiguity in order to distort the language of an unambiguous policy, or, in order to enforce a particular construction which it might feel is more appropriate.'" *Id.* at 875-76 (quoting *Rodriguez v. Gen. Accident Ins. Co.*, 808 S.W.2d 379, 382 (Mo. banc 1991)). Thus, we do not find *Hocker Oil* probative of how the Supreme Court of Missouri would decide this case.

Second, even if *Hocker Oil* were to represent the best evidence of Missouri law, its unique facts differ substantially from those presented here. The insured in *Hocker Oil* purchased its insurance from the insurer's "Gasoline Department," and, as a gas station operator, nearly all of its liability risk related in some way to gasoline. Under those circumstances, a reasonable insurance purchaser might be surprised to

discover that its policy excludes categorically all harm arising out of the release of gasoline. For this reason, "the court in *Hocker Oil* expressly limited its holding to gasoline." *Doe Run*, 719 F.3d at 874. In contrast, sealing concrete floors represents only a portion—perhaps twenty-five percent—of Titan's business, and Titan uses a number of concrete sealants other than TIAH. Titan faces a wide range of liability risks unrelated to TIAH, and many of those risks would fall within the policy's coverage. Thus, we do not believe that *Hocker Oil* would obligate us to cast aside the unambiguous text of the policy.[2]

We are mindful of the concern that an unbounded pollution exclusion could swallow up the inclusionary provisions of a policy. *See Pipefitters Welfare Edu. Fund v. Westchester Fire Ins. Co.*, 976 F.2d 1037, 1043 (7th Cir. 1992). But the text of the exclusion imposes limitations on its own scope separate from the definition of pollutant. For example, the absolute pollution exclusion applies only to harm caused by the "discharge, dispersal, seepage, migration, release or escape" of a pollutant. Thus, the exclusion will not apply, even in cases involving a pollutant, if the pollutant did not propagate in one of these enumerated ways. *See, e.g.*, *Porterfield*, 856 So.2d at 805-06 (holding that, although lead paint constitutes a "pollutant," the absolute

---

[2]Titan also cites *American National Property & Casualty Co. v. Wyatt*, 400 S.W.3d 417 (Mo. Ct. App. 2013), which held—relying almost exclusively on cases from other jurisdictions—that an ordinary insurance purchaser reasonably could conclude that "pollutant" includes only traditional environmental pollution. *Id.* at 426. Titan does not urge us to adopt this sweeping rule, which conflicts with several Missouri cases that have applied the absolute pollution exclusion to a wider range of substances. *See, e.g.*, *Heringer v. Am. Family Mut. Ins. Co.*, 140 S.W.3d 100, 105-06 (Mo. Ct. App. 2004) (expressly rejecting the argument that "pollutant" is limited to traditional environmental pollution); *Boulevard Inv. Co. v. Capitol Indem. Corp.*, 27 S.W.3d 856, 858 (Mo. Ct. App. 2000) (holding that kitchen grease constituted pollutant). Given its limited consideration of Missouri case law and its failure even to address contrary authority such as *Heringer* and *Boulevard*, we do not find *Wyatt* especially instructive as to how the Supreme Court of Missouri would decide this case.

pollution exclusion did not apply because flaking of lead paint from walls did not constitute "discharge"); *cf.* 9 Couch on Insurance § 127:9 (3d ed. 2013) (collecting cases). So "if a child were injured because he drank from a bottle of . . . [a] household product, even if that product properly could be classified as a 'pollutant,' the injury would not be covered by the pollution exclusion because the pollutant was not disseminated by one of the prescribed methods." *Lefrak Org., Inc. v. Chubb Custom Ins. Co.*, 942 F. Supp. 949, 954 (S.D.N.Y. 1996). Similarly, textual analysis might also avert "absurd results," such as the speculation that the exclusion "would bar coverage for bodily injuries suffered by one who slips and falls on the spilled contents of a bottle of Drano." *Pipefitters*, 976 F.2d at 1043. As we have noted previously, the absolute pollution exclusion will not necessarily apply where the substance causing injury has the potential to irritate but has—like the Drano in the hypothetical—caused harm in a manner other than by irritating. *See Sargent Const. Co. v. State Auto Ins. Co.*, 23 F.3d 1324, 1327 (8th Cir. 1994) (applying Missouri law).[3] We believe that these interpretive principles, grounded in the text of the policy, substantially limit the scope of the absolute pollution exclusion without deviating radically from its actual language.

---

[3]Citing *Sargent Construction*, the dissent states that "this court has previously concluded that identical language defining 'pollutant' is ambiguous." *Post* at 11. But "[t]he question of ambiguity cannot be viewed in the abstract. A particular word or phrase in any writing is ambiguous only with reference to some specific issue." *State ex rel. Mathewson v. Bd. of Election Comm'rs*, 841 S.W.2d 633, 635 (Mo. banc 1992). Thus, a particular policy provision may be ambiguous with respect to the factual situation presented by one claim but unambiguous as to another. *See State Farm Mut. Auto. Ins. Co. v. DeCaigney*, 927 S.W.2d 907, 909-10 (Mo. Ct. App. 1996). The "specific issue" presented in *Sargent Construction*—whether a substance constitutes an irritant when it causes harm other than by irritating—is wholly unrelated to the question presented here. Thus, *Sargent Construction* does not control whether the term "pollutant" is ambiguous as to the facts of this case.

We therefore conclude that TIAH unambiguously constitutes a pollutant under the absolute pollution exclusion. The district court rested its grant of summary judgment in favor of Titan exclusively on the ground that TIAH is not a pollutant, and Titan did not present any alternate grounds for affirming that decision. Accordingly, we vacate the district court's grant of summary judgment.

United also asks that we reverse the district court's denial of its summary judgment motion. Ordinarily, we cannot review the denial of a motion for summary judgment, because it does not constitute a final order. *Nyari v. Napolitano*, 562 F.3d 916, 922 (8th Cir. 2009); *see also* 28 U.S.C. § 1291. However, when a party appeals both the denial of its motion for summary judgment and the grant of summary judgment in favor of the appellee, we may review both orders and, if appropriate, direct the entry of summary judgment in favor of the appellant. *Nyari*, 562 F.3d at 922. Under such circumstances, the denial of summary judgment "merge[s] into" the final order granting summary judgment and thereby becomes reviewable. *Swaback v. Am. Info. Techs. Corp.*, 103 F.3d 535, 543 (7th Cir. 1996).

Because the district court premised its denial of United's motion for summary judgment exclusively on the erroneous conclusion that TIAH does not constitute a pollutant, we vacate the district court's order. However, we decline to direct the entry of summary judgment in favor of United. In addition to contesting whether TIAH constitutes a pollutant, Titan also argued to the district court that the complaint in the underlying state-court case did not allege the "discharge, dispersal, seepage, migration, release or escape" of TIAH. This contention, if correct, would render the absolute pollution exclusion inapplicable in this case. The district court did not reach this issue, and the parties have not addressed it on appeal. Because this argument raises complex factual and legal questions, we believe that "it would be beneficial for the district court to consider this issue in the first instance." *Loftness Specialized Farm Equip., Inc. v. Twiestmeyer*, 742 F.3d 845, 851 (8th Cir. 2014). Accordingly,

we vacate the denial of United's motion for summary judgment and remand for further proceedings.

## III. Conclusion

For the foregoing reasons, we vacate the district court's grant of summary judgment in favor of Titan and its denial of United's motion for summary judgment, and we remand this case to the district court for further proceedings consistent with this opinion.

BRIGHT, Circuit Judge, dissenting.

I respectfully dissent. The district court correctly concluded that an ambiguity exists "in the policy language as it relates to Titan's allegedly negligent application of TIAH to seal the concrete floor."

Under Missouri law, ambiguity exists in an insurance policy "'when there is duplicity, indistinctness, or uncertainty in the meaning of the language in the policy'" and "'[l]anguage is ambiguous if it is reasonably open to different constructions.'" *Daughhetee v. State Farm Mut. Auto. Ins. Co.*, 743 F.3d 1128, 1132 (8th Cir. 2014) (quoting *Burns v. Smith*, 303 S.W.3d 505, 509 (Mo. 2010) (en banc)). In construing the terms of an insurance policy, this court "must apply 'the meaning which would be attached by an ordinary person of average understanding if purchasing insurance.'" *Id.* (quoting *Seeck v. Geico Gen. Ins. Co.*, 212 S.W.3d 129, 132 (Mo. 2007) (en banc)). Additionally, under Missouri law, we strictly construe ambiguous policy exclusions and limitations against the insurer. *Capitol Indem. Corp. v. 1405 Assocs., Inc.*, 340 F.3d 547, 550 (8th Cir. 2003) (citing *Standard Artificial Limb, Inc. v. Allianz Ins. Co.*, 895 S.W.2d 205, 209 (Mo. Ct. App. 1995)); *Burns*, 303 S.W.3d at 509-10.

Here, a reasonable policy holder would expect that a liability insurance policy issued to a contractor in the business of cleaning and sealing concrete floors would cover injuries suffered as a result of exposure to the products used in cleaning and sealing floors. As much as twenty-five percent of Titan's business includes applying concrete sealant after the completion of new construction. Thus, similar to the gasoline at issue in *Hocker Oil Co., Inc. v. Barker-Phillips-Jackson, Inc.*, TIAH "is not a pollutant in [Titan's] eyes." 997 S.W.2d 510, 518 (Mo. Ct. App. 1999). Rather, TIAH "belongs in the environment in which [Titan] routinely works" and "in that environment, [TIAH] is not a pollutant." *Id.* Furthermore, in that environment, with ordinary ventilation, the product can be used safely. If any uncertainty exists as to whether the policy's "pollution" definition excludes TIAH, the policy must be ambiguous. *See Daughhetee*, 743 F.3d at 1132. Moreover, this court has previously concluded that identical language defining "pollutant" is ambiguous. *See Sargent Constr. Co., Inc. v. State Auto Ins. Co.*, 23 F.3d 1324, 1327 (8th Cir. 1994) (applying Missouri law).

Because the operative policy language is ambiguous, Titan's interpretation of the pollution exclusion language controls. Therefore, I would affirm the district court.

_____