# United States Court of Appeals
## For the Eighth Circuit

———————————————

No. 22-3301

———————————————

Liberty Insurance Corporation

*Plaintiff - Appellant*

v.

HNTB Corporation

*Defendant - Appellee*

——————————

Appeal from United States District Court
for the Western District of Missouri - Kansas City

——————————

Submitted: September 20, 2023
Filed: December 5, 2023
[Published]

——————————

Before SHEPHERD, KELLY, and STRAS, Circuit Judges.

——————————

PER CURIAM.

A bridge-deck collapse during a construction project resulted in serious injuries. The question in this case is who is financially responsible: an engineering firm or its insurer? The district court ruled at summary judgment that it was the

insurer.  There are key facts in dispute, however, so we reverse and remand for further proceedings.

I.

The construction project involved lowering a bridge deck onto abutments to improve a stretch of highway in California.  Unfortunately, water became trapped in the deck, which caused it to fall.  When it did, the scaffolding and the construction workers on top fell too.

An engineer from HNTB Corporation was onsite when the accident happened.  According to the injured workers, he was responsible for inspecting the bridge deck, which should have revealed the water trapped inside.  HNTB, on the other hand, claims that he was there only for "independent quality assurance"—to "check[] the checker" so to speak—so there was nothing he could have done.

After the workers sued HNTB in state court, its insurers, including Liberty Insurance Corporation, stepped in.  Liberty and HNTB's professional-liability insurer initially agreed to split the cost of the defense.  Eventually, however, Liberty determined there was no coverage for the accident under two exclusions, one for "construction management" and the other for "professional liability."  At that point, Liberty stopped participating.

HNTB, without Liberty's help, settled for $2.5 million.  Only then did Liberty ask a federal court to declare that it was not on the hook for the settlement.  *See* 28 U.S.C. §§ 1332(a)(1), 2201(a).  HNTB counterclaimed for a declaratory judgment saying the opposite.  The district court granted partial summary judgment to HNTB.[1]

---

[1]The district court did not address HNTB's counterclaims for other forms of relief, including damages.  It made the partial judgment final, however, *see* Fed. R.

II.

We review the grant of summary judgment de novo. *Bharadwaj v. Mid Dakota Clinic*, 954 F.3d 1130, 1134 (8th Cir. 2020). Summary judgment is available when there is "no genuine issue of material fact" and "the evidence, viewed in a light most favorable to the nonmoving party, shows . . . the [party seeking it] is entitled to judgment as a matter of law." *Id.* (citation omitted). A factual dispute is "genuine" if "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Under the terms of HNTB's policy, Liberty's obligation to pay depends on the focus of the workers' lawsuit. *See Esicorp, Inc. v. Liberty Mut. Ins. Co.*, 193 F.3d 966, 971 (8th Cir. 1999) (concluding that, under Missouri law, "an insurer's liability when the insured has settled the underlying action may not exceed the policy coverage[]").[2] If it "ar[ose] out of" an activity the policy excludes, then Liberty has no obligation to pay. *See id.*

One excluded activity is construction management: "[i]nspection, supervision, quality control, architectural or engineering activities done by or for [HNTB] on a project on which [it] serve[d] as construction manager." Another is "the rendering of or failure to render any *professional services* . . . with respect to . . . [p]roviding engineering . . . services to others in [HNTB's] capacity as an engineer."

_____

Civ. P. 54(b), so we can review it, *see* 28 U.S.C. § 1291. But we cannot consider the counterclaims it has yet to resolve. *See Allen v. Bryers*, 512 S.W.3d 17, 31 (Mo. banc 2016) (observing that the "duty to defend is broader than [the] duty to indemnify").

[2]We agree with the parties that Missouri law applies to this coverage dispute. *See United Fire & Cas. Co. v. Titan Contractors Serv., Inc.*, 751 F.3d 880, 883 (8th Cir. 2014).

(Emphasis added.) "[P]rofessional services include . . . [s]upervisory or inspection activities performed as part of any related architectural or engineering activities." These are broad exclusions, to be sure, but the parties do not dispute that there *is* still coverage for general business risks, just not the expressly excluded specialized activities.

Whether HNTB's work on the project included those types of specialized activities is the main point of contention. *See McCormack Baron Mgmt. Servs., Inc. v. Am. Guar. & Liab. Ins. Co.*, 989 S.W.2d 168, 173 (Mo. banc 1999) ("The duty to indemnify is determined by the facts as they are . . . finally determined by . . . settlement."). The workers' theory, which Liberty now adopts, was that HNTB had a contract "to perform [both] construction management services" and independent quality assurance. Its specific responsibilities included ensuring compliance with various requirements and regulations, enforcing safety rules, identifying problems, and recommending "sound engineering solutions." According to the workers, the on-site HNTB engineer failed to perform these duties competently when he missed "the defects in the structure" and the "water in the bridge deck."

Evidence backs up this theory. Besides the contract itself, there was HNTB's own "Project Work Plan," which listed similar responsibilities. Among them was "recommend[ing] sound engineering solutions" to "actual and potential problems associated with the construction project work." "Project Management" and "Construction Management," in other words, were among the tasks that HNTB performed, which triggered the exclusions in the policy and, if proven, would relieve Liberty of its obligation to pay.

HNTB viewed the scope of its responsibilities differently. According to the project manager, its *only* role was independent quality assurance, regardless of what the "boilerplate" Project Work Plan said. He explained that HNTB's contract with the California Department of Transportation covered many projects, and in this one, it had no construction-management responsibilities. Nor did it provide "professional

-4-

services" of the "architectural or engineering" variety, either directly or by supervising someone else.  Without either, Liberty would have to pay.

With coverage hanging on the resolution of a factual dispute over HNTB's role on the bridge project, summary judgment is unavailable.  *See* Fed. R. Civ. P. 56(a); *see also Anderson*, 477 U.S. at 248.  Genuine disputes of material fact are for a factfinder to resolve.  *See Anderson*, 477 U.S. at 250 (explaining that if a factual dispute "may reasonably be resolved in favor of either party," it "can be resolved only by a finder of fact").

## III.

But there is one issue we can resolve now.  HNTB also seeks coverage under an "umbrella" policy with Liberty.  It also has exclusions, but a key feature is that coverage only kicks in if HNTB's liability exceeds the coverage limits of its other policies.  One policy with a different insurer covers up to $5 million.  Obviously, there can be no dispute that $2.5 million, the amount of the settlement, is less than $5 million, so under the umbrella policy Liberty has no duty to indemnify HNTB, regardless of any exclusions.

## IV.

We accordingly reverse the grant of partial summary judgment to HNTB, direct the district court to enter judgment in Liberty's favor on the umbrella-policy claim, and remand for further proceedings.

_____