# United States Court of Appeals

### For the Eighth Circuit

_____

No. 24-1180

_____

North Star Mutual Insurance Company

*Plaintiff - Appellee*

v.

Lyle Rodin; Darin Rodin

*Defendants - Appellants*

Larry Alber

*Defendant*

_____

Appeal from United States District Court
for the District of North Dakota - Eastern

_____

Submitted: October 23, 2025
Filed: April 7, 2026

_____

Before SMITH, KELLY, and GRASZ, Circuit Judges.

_____

SMITH, Circuit Judge.

Larry Alber sued Lyle Rodin and Darin Rodin (collectively, "the Rodins") in state court alleging that a portable heater in the Rodins' farm shop emitted dangerous levels of carbon monoxide and seriously injured him while he was working on the

Rodins' farm. The Rodins' insurer, North Star Mutual Insurance Company (North Star), brought a declaratory judgment action against the Rodins requesting the district court to declare that North Star was not required to defend or indemnify the Rodins in Alber's state court action because the policy's pollution exclusion barred coverage. The district court[1] granted summary judgment for North Star, declaring that North Star did not have a duty to defend or indemnify the Rodins in the state court action. The Rodins appeal. We affirm.

## I. *Background*

The Rodins operated a farm in Southeastern North Dakota. Alber sued the Rodins in state court after he was injured while working on their farm. Alber alleged that a portable heater that the Rodins placed in the farm shop emitted dangerous levels of carbon monoxide and caused him life-altering cardiovascular and neurological injuries.

North Star had issued a liability insurance policy (Policy) to the Rodins. The Policy insured the Rodins from liability for bodily injuries sustained on their property but excluded bodily injuries that resulted from pollutants. The pollution exclusion stated:

This policy does not apply to:

. . .

1) "bodily injury" or "property damage" that results from the actual, alleged, or threatened discharge, dispersal, seepage, migration, spill, release, or escape of "pollutants" into or upon land, water, or air, or

2) any loss, cost, or expense arising out of any:

a) request, demand, or order that any "insured" or others test for, monitor, clean up, remove, contain, treat, detoxify, neutralize, or in any way respond to or assess the effects of "pollutants"; or

---

[1]The Honorable Peter D. Welte, Chief Judge, United States District Court for the District of North Dakota.

b) claim or suit by or on behalf of any governmental authority relating to testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, or in any way responding to or assessing the effects of "pollutants[.]"

R. Doc. 3-2, at 88. The Policy defined "pollutant" as:

a. any solid, liquid, gaseous, thermal, or radioactive irritant or contaminant, including acids, alkalis, chemicals, fumes, smoke, soot, vapor, and waste. Waste includes materials to be recycled, reclaimed, or reconditioned, as well as disposed of; and

b. electrical or magnetic emissions, whether visible or invisible, and sound emissions.

*Id.* at 85.

About a month after Alber sued the Rodins, North Star filed this declaratory judgment action against the Rodins. North Star sought a declaration that it was not required to defend or indemnify the Rodins in Alber's lawsuit. Specifically, North Star asserted that the Policy's pollution exclusion barred coverage for Alber's claims because Alber alleged that he was injured by carbon monoxide, which North Star contended is within the definition of pollutant.

In the declaratory judgment action, both parties moved for summary judgment. North Star requested the district court to conclude that the pollution exclusion barred coverage for Alber's claims and the Rodins requested the district court to find the exclusion inapplicable. The district court granted North Star's motion and denied the Rodins'. It held that North Star did not have a duty to defend or indemnify the Rodins in Alber's state court action because carbon monoxide is a "pollutant" as defined by the Policy. The Rodins appeal.

## II. *Discussion*

The Rodins argue that the district court erred when it granted North Star's motion for summary judgment. They argue that under North Dakota law, the pollution exclusion does not bar coverage for a bodily injury claim caused by carbon monoxide emitted from a portable heater. Alternatively, the Rodins request that we certify the question of interpreting the pollution exclusion to the North Dakota Supreme Court.

### A. *Certification to the North Dakota Supreme Court*

The Rodins request that we certify the following question to the North Dakota Supreme Court: "Under North Dakota rules of interpretation and construction, does North Star Mutual Insurance Company's 'pollution' exclusion apply to exclude coverage for an individual bodily injury claim allegedly due to carbon monoxide exposure caused by a portable heater being used to heat a farm shop?" They explain that North Dakota law, which is controlling here, has not interpreted a pollution exclusion provision. Therefore, the Rodins contend that we should certify the question to the North Dakota Supreme Court so that it has an opportunity to address the issue, rather than predict a holding by the North Dakota Supreme Court.

"Certification is by no means 'obligatory' merely because state law is unsettled; the choice instead rests 'in the sound discretion of the federal court.'" *McKesson v. Doe*, 592 U.S. 1, 5 (2020) (quoting *Lehman Bros. v. Schein*, 416 U.S. 386, 391 (1974)). "Our system of 'cooperative judicial federalism' presumes federal and state courts alike are competent to apply federal and state law." *Id.* (quoting *Lehman Bros.*, 416 U.S. at 391). Thus, "[a]bsent a 'close' question and lack of state sources enabling a nonconjectural determination, a federal court should not avoid its responsibility to determine all issues before it." *Shakopee Mdewakanton Sioux Cmty. v. City of Prior Lake*, 771 F.2d 1153, 1157 n.2 (8th Cir. 1985).

On this record, we decline to certify the pollution exclusion issue. Although the North Dakota Supreme Court has not interpreted a pollution exclusion provision, it has provided ample guidance on how to interpret insurance policies under North

Dakota law. North Dakota law is sufficiently clear to enable federal courts to make a nonconjectural determination on the pollution exclusion's enforceability.

Additionally, we note that the Rodins did not move to certify a question until after the district court granted summary judgment in North Star's favor. Indeed, the Rodins did not seek certification in the district court at all, deciding instead to file the motion in this court on appeal. "The practice of requesting certification after an adverse judgment has been entered should be discouraged. Otherwise, the initial federal court decision will be nothing but a gamble with certification sought only after an adverse decision." *Perkins v. Clark Equip. Co., Melrose Div.*, 823 F.2d 207, 210 (8th Cir. 1987). We will grant certification after a case has been decided "only in limited circumstances." *Id.* This record is not within those circumstances.

Accordingly, we deny the Rodins' motion to certify a question to the North Dakota Supreme Court.

B. *Interpretation of the Pollution Exclusion*

The Rodins argue that the district court erred when it granted North Star's motion for summary judgment. Specifically, they contend that the district court erred when it concluded that under North Dakota law, the pollution exclusion at issue excludes coverage for Alber's bodily injury claim that was allegedly caused by carbon monoxide emitted from a portable heater. Upon review, we conclude that the district court did not err.

"We review the district court's grant of summary judgment de novo." *Lipp v. Cargill Meat Sols. Corp.*, 911 F.3d 537, 543 (8th Cir. 2018). We will grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If there is a genuine dispute, we view the disputed facts in the light most favorable to the nonmovant. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Id.*

(quoting *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009)). "We may affirm summary judgment for any reason supported by the record." *Gareis v. 3M Co.*, 9 F.4th 812, 818 (8th Cir. 2021).

It is undisputed that North Dakota law governs this action. The North Dakota Supreme Court has summarized its standards for construing insurance policies as follows:

> Our goal when interpreting insurance policies, as when construing other contracts, is to give effect to the mutual intention of the parties as it existed at the time of contracting. We look first to the language of the insurance contract, and if the policy language is clear on its face, there is no room for construction. "If coverage hinges on an undefined term, we apply the plain, ordinary meaning of the term in interpreting the contract." While we regard insurance policies as adhesion contracts and resolve ambiguities in favor of the insured, we will not rewrite a contract to impose liability on an insurer if the policy unambiguously precludes coverage. We will not strain the definition of an undefined term to provide coverage for the insured. We construe insurance contracts as a whole to give meaning and effect to each clause, if possible. The whole of a contract is to be taken together to give effect to every part, and each clause is to help interpret the others.

*Grinnell Mut. Reinsurance Co. v. Thies*, 755 N.W.2d 852, 856 (N.D. 2008) (quoting *State, ex rel. State Fire & Tornado Fund of N.D. Ins. Dep't v. N.D. State Univ.*, 694 N.W.2d 225 (N.D. 2005)). The North Dakota Supreme Court has not interpreted a pollution exclusion provision. We must, therefore, predict how it would do so. *See Northland Cas. Co. v. Meeks*, 540 F.3d 869, 874 (8th Cir. 2008) ("When there is no state supreme court case directly on point, our role is to predict how the state supreme court would rule if faced with the issues before us." (quoting *Cotton v. Commodore Exp., Inc.*, 459 F.3d 862, 864 (8th Cir. 2006)).

Generally, courts interpret pollution exclusion provisions in one of two ways. Some courts interpret pollution exclusions narrowly. For example, in *Regional Bank of Colorado, N.A. v. St. Paul Fire & Marine Insurance Co.*, the Tenth Circuit,

applying Colorado law, concluded that personal injuries received by tenants exposed to carbon monoxide emitted from a residential heater were not excluded by the policy's pollution exclusion provision. 35 F.3d 494, 497 (10th Cir. 1994). Courts that interpret pollution exclusion provisions narrowly typically reason that the provisions are ambiguous and thus should be interpreted against the insurer, or they apply the reasonable expectation doctrine[2] to determine that an ordinary policy holder would reasonably expect the provision to apply only to claims related to traditional environmental pollution. *See Stoney Run v. Prudential-LMI Com. Ins. Co.*, 47 F.3d 34, 36–37 (2d Cir. 1995); *see also MacKinnon v. Truck Ins. Exchange*, 73 P.3d 1205, 1216 (Cal. 2003) ("Limiting the scope of the pollution exclusion to injuries arising from events commonly thought of as pollution, i.e. environmental pollution, also appears to be consistent with the choice of terms 'discharge, dispersal, release or escape.'"); *Nav-Its, Inc. v. Selective Ins. Co. of Am.*, 869 A.2d 929, 936–37 (N.J. 2005) ("[W]e are confident that the history of the pollution-exclusion clause in its various forms demonstrates that its purpose was to have a broad exclusion for traditional environmentally related damages."). The Rodins contend that the North Dakota Supreme Court would interpret the Policy's pollution exclusion provision narrowly.

Other courts interpret the provisions as "absolute" exclusions that exclude claims beside those related to environmental pollution. For example, in *Nautilus Insurance Co. v. Country Oaks Apartments*, the Fifth Circuit, applying Texas law, concluded that personal injuries received by a tenant exposed to carbon monoxide emitted from a furnace were excluded by the policy's pollution exclusion provision. 566 F.3d 452, 458 (5th Cir. 2009). Courts that interpret pollution exclusion provisions as "absolute" exclusions typically reason that the provisions unambiguously exclude coverage. *See id.*; *see also Deni Assocs. of Fla., Inc. v. State Farm Fire & Cas. Ins. Co.*, 711 So.2d 1135, 1140 (Fla. 1998) ("Applying the unambiguous language of the pollution exclusion clause to the facts . . . it is clear

---

[2]North Dakota does not apply the reasonable expectation doctrine when interpreting insurance policies. *See Nationwide Mut. Ins. Cos. v. Lagodinski*, 683 N.W.2d 903, 911–12 (N.D. 2004).

that the incidents at issue were excluded from coverage under the respective insurance policies."); *Bd. of Regents of Univ. of Minn. v. Royal Ins. Co. of Am.*, 517 N.W.2d 888, 892 (Minn. 1994) ("[T]he exclusion goes on to include 'other irritants, contaminants, or pollutants.' We would be doing a disservice to the English language if we were to say that asbestos fibers, which are a health hazard because of their irritant effects on the human body, were not an irritant."). North Star contends that the North Dakota Supreme Court would interpret the Policy's pollution exclusion provision as an "absolute" exclusion.

We have interpreted pollution exclusion provisions both ways, depending on which state's law we were applying. In *Sargent Construction Co. v. State Auto Ins.*, 23 F.3d 1324 (8th Cir. 1994), and *First Realty, Ltd. v. Frontier Insurance Co.*, 378 F.3d 729 (8th Cir. 2004), we interpreted the pollution exclusion provisions narrowly after applying Missouri and Iowa law, respectively. In both cases, we concluded that the terms "irritant" and "contaminant," as used in the provisions, were ambiguous, and consequently interpreted the provisions against the insurers and in favor of coverage. *See Sargent Const. Co.*, 23 F.3d at 1327; *First Realty, Ltd.*, 378 F.3d at 733. Contrastingly, in *United Fire & Casualty Co. v. Titan Contractors Service, Inc.*, 751 F.3d 880 (8th Cir. 2014), and *Church Mut. Ins. v. Clay Center Christian Church*, 746 F.3d 375 (8th Cir. 2014), we concluded that the provisions were "absolute" exclusions after applying Missouri and Nebraska law, respectively.[3] In *United Fire & Casualty Co.* and *Church Mutual Insurance Co.*, we found that the provisions were unambiguous after using dictionaries to define "irritant" and "contaminant." *See United Fire & Cas. Co.*, 751 F.3d at 884; *Church Mut. Ins. Co.*, 746 F.3d at 380. Similarly, in *Hiland Partners GP Holdings v. National Union Fire Insurance Co. of*

---

[3]In *United Fire & Casualty*, we explained that *Sargent Construction Co.* did not control the outcome of the case, despite the fact that both cases applied Missouri law, because the cases were factually distinguishable. *United Fire & Cas. Co.*, 751 F.3d at 886 n.3. In *Church Mutual Insurance Co.*, we explained that *Sargent Construction Co.* and *First Realty, Ltd.* had no bearing on our resolution of the case because neither of those cases applied Nebraska law. *Church Mut. Ins. Co.*, 746 F.3d at 380 n.3.

*Pittsburgh*, we applied North Dakota law to conclude that the pollution exclusion was "absolute" and unambiguously excluded coverage. 847 F.3d 594 (8th Cir. 2017).[4]

Here, like in *United Fire & Casualty Co.*, *Church Mutual Insurance Co.*, and *Hiland Partners*, we conclude that the Policy's pollution exclusion unambiguously excludes coverage for Alber's bodily injury claim. It is undisputed that Alber's claim falls within the general inclusionary terms of the Policy. Therefore, North Star owes the Rodins a duty to defend or indemnify them so long as those claims are not excluded by the Policy's pollution exclusion provision.

Alber's claims are excluded by the pollution exclusion if North Star and the Rodins' mutually intended for the Policy to exclude such claims when they entered into the contract. *See Grinnell Mut. Reinsurance Co.*, 755 N.W.2d at 856. The pollution exclusion provision excludes claims alleging bodily injury that resulted from the discharge, dispersal, seepage, migration, spillage, release, or escape of "pollutants." We must look to the language of the Policy to determine if the cause of Alber's bodily injury claim—the emission of carbon monoxide from a portable heater—constitutes the discharge, dispersal, seepage, migration, spillage, release, or escape of "pollutants." *See id.*

"The dictionary is a good source to determine the plain, ordinary definition of an undefined term." *Hanneman v. Cont'l W. Ins. Co.*, 575 N.W.2d 445, 451 (N.D. 1998). "Discharge" means "to give outlet or vent to: emit." *Discharge*, https://www.merriam-webster.com/dictionary/discharge (last visited March 27, 2026). Webster's Dictionary provides the following example: "vehicles *discharging* exhaust fumes[.]" *Id.* Alber's bodily injuries were caused by carbon monoxide *discharging* from the portable heater. Applying this ordinary definition of discharge,

---

[4]In *Hiland Partners*, we found that the appellant waived its argument that the pollution exclusion was ambiguous. 847 F.3d at 598.

we conclude that Alber's claims are excluded if carbon monoxide is a "pollutant" as used in the pollution exclusion provision.

The Policy defines "pollutant," in relevant part, as "any solid, liquid, gaseous, thermal, or radioactive irritant or contaminant, including acids, alkalis, chemicals, fumes, smoke, soot, vapor, and waste." R. Doc. 3-2, at 85. Carbon monoxide is gaseous. *See Carbon monoxide*, Merriam-Webster, https://www.merriam-webster.com/dictionary/carbon%20monoxide (last visited March 27, 2026). Therefore, if carbon monoxide is also an irritant or contaminant, then it qualifies as a "pollutant" under the Policy's definition. "Contaminant" is defined as "something that contaminates." *Contaminant*, Merriam-Webster, https://www.merriam-webster.com/dictionary/contaminant (last visited March 27, 2026). "Contaminate" is defined as "to make unfit for use by the introduction of unwholesome or undesirable elements." *Contaminate*, https://www.merriam-webster.com/dictionary/contaminates (last visited March 27, 2026). As we explained in *Church Mutual Insurance Co.*, "carbon monoxide is a gas that can render air 'unfit for use' if introduced at high levels." 746 F.3d at 381. Thus, carbon monoxide constitutes a pollutant under the Policy. Because Alber's claim alleged a bodily injury that resulted from the discharge of a pollutant, the district court did not err in concluding that the pollution exclusion provision excludes coverage of the claim.

The Rodins' arguments against the district court's interpretation of the exclusion provision are unpersuasive. They urge us to define "contaminant" using its technical meaning. We are not persuaded. Particularly, we note, their brief does not provide the technical meaning that we should apply. We reject their argument that we should consider the historical context of pollution exclusions because the language used in the provision at issue is clear and unambiguous. "When an agreement has been memorialized in a clear and unambiguous writing, extrinsic evidence should not be considered to ascertain intent." *Hallin v. Inland Oil & Gas Corp.*, 903 N.W.2d 61, 64 (N.D. 2017).

The Rodins' contention that the district court's interpretation of the pollution exclusion fails to give meaning to every clause is also unpersuasive. The Rodins argue that the district court's interpretation of the Policy makes the lead exclusion superfluous since injuries caused by lead would already be excluded by the pollution exclusion. The Rodins, however, misread the Policy. The lead exclusion states that the Policy does not apply to "actual or alleged 'bodily injury' or 'property damage' that results directly or indirectly from any form of lead. This includes, but is not limited to, the ingestion, inhalation, or absorption of lead in any form." R. Doc. 3-2, at 89. Even if we assume that lead is a pollutant, the pollution exclusion only excludes injuries caused by the discharge, dispersal, seepage, migration, spill, release, or escape of lead. The lead exclusion extends the exclusion to injuries caused by lead that did not result from discharge, dispersal, seepage, migration, spillage, release, or escape.

Lastly, the Rodins' argue that the district court's interpretation of the pollution exclusion provision could lead to absurd results. We disagree. The Rodins contend that under the district court's interpretation, "there is no limitation to the scope of the pollution exclusion where damages flow from exposure to a substance, because every substance that causes bodily injury or damage to property is a 'pollutant' no matter the context." Appellant's Br. 18. As we explained in *United Fire & Casualty Co.*, "the text of the exclusion imposes limitations on its own scope separate from the definition of pollutant." 751 F.3d at 886. For example, the pollution exclusion only applies when the injury resulted from the discharge, dispersal, seepage, migration, spill, release, or escape of a pollutant. If the pollutant causes an injury in a way that is not listed in the Policy, the claim is not excluded. Moreover, we "avoid resolving disputes based on hypothetical facts because to do so would be a poor use of scarce judicial resources." *Public Water Supply Dist. No. 8 of Clay Cnty. v. City of Kearney*, 401 F.3d 930, 932 (8th Cir. 2005). As the Fifth Circuit explained in *Nautilus Insurance Co.*, "[i]t is irrelevant that . . . given sufficient imagination, we can think of ways—not presented here—in which enforcement of this exclusion would lead to absurd results." 566 F.3d at 458. The district court did not err in

making its prediction of the North Dakota Supreme Court's interpretation of the Policy.

### III. *Conclusion*

Accordingly, we deny the Rodins' motion to certify a question to the North Dakota Supreme Court and we affirm the judgment of the district court.

_____