**Kathleen SCHMITZ and Craig Ewing, Appellants/Cross–Respondents,**

**v.**

**GREAT AMERICAN ASSURANCE COMPANY a/k/a Great American Insurance, Respondent/Cross–Appellant.**

No. SC 91098.

Supreme Court of Missouri, En Banc.

April 26, 2011.

Rehearing Denied May 31, 2011.

David J. Moen, David J. Moen PC, Jefferson City, Thomas K. Riley, Riley & Dunlap PC, Fulton, for Parents.

Paul L. Wickens, Kyle N. Roehler, Foland, Wickens, Eisfelder, Roper & Hofer PC, Kansas City, for Great American.

MARY R. RUSSELL, Judge.

A young woman died from injuries she sustained after falling from a portable rock climbing wall at a minor league baseball game. Her parents sued the baseball team's owner, which had both a primary insurance policy and an excess insurance policy. Both insurers refused to defend. To protect itself from potential liability, the owner entered into a section 537.065 [1] agreement with the parents that limited collection of any judgment to the insurance policies. A bench trial was held, the trial court entered a judgment finding the owner liable, and the parents were awarded $4,580,076 in damages.

The parents brought an equitable garnishment suit against the insurers. After partial summary judgment was entered in favor of the parents, the primary insurer settled for less than its policy limit. In return, the parents entered a release for the full amount of the policy limit. The excess insurer disputed that it was required to pay because the primary insurance policy had not been exhausted and because the trial court's judgment was not reasonable. The equitable garnishment court found that the judgment was unreasonable and that the excess insurer was not required to pay because the primary insurance policy had not been exhausted.

The parents appeal, arguing that the excess insurance policy did not require the primary insurance policy to be exhausted before the excess insurer was obligated to pay. They also claim the judgment is not subject to the reasonableness test as set forth in *Gulf Insurance Co. v. Noble Broadcast*, 936 S.W.2d 810, 815 (Mo. banc 1997), which requires all settlements entered under section 537.065 to be reasonable.

The equitable garnishment court erred in applying the *Gulf Insurance* test to a judgment entered after a bench trial. Further, the terms of the excess insurance policy did not require the primary insurance policy to be exhausted in the form of a cash payment. Accordingly, this case is affirmed in part, reversed in part and remanded.[2]

### I. Background

Christine Ewing died as a result of the injuries she sustained after falling while

---

1. Unless otherwise noted, all statutory references are to RSMo 2000.

2. The excess insurer cross-appeals, raising two points. It argues that the trial court erred in finding that the primary insurance policy's exclusion for amusement devices did not apply to rock climbing walls. The excess insurer also contends that it is not bound to the section 537.065 agreement because a condition precedent to enforcing the agreement is that the insurer unjustifiably deny its duty to defend the insured. Both points are without merit.

climbing a portable rock wall. The portable rock wall was owned by Marcus Floyd and operated by him during a minor league baseball game.

Christine's parents, Kathleen Schmitz and Craig Ewing, filed a wrongful death lawsuit against Floyd and Columbia Professional Baseball (CPB), the owner of the minor league baseball team. The parents settled their case against Floyd for $700,000, and the suit against CPB remained. The parents claimed that CPB was vicariously liable for Floyd's actions because it exclusively controlled and possessed the premises on which the portable rock wall was operated.

CPB was insured by Virginia Surety Company[3] and Great American Assurance Company. Virginia Surety's policy provided primary coverage of $1 million, and Great American's policy provided excess coverage of $4 million. CPB gave both insurers notice of Christine's death and of the resulting wrongful death suit. Virginia Surety denied any duty to defend or indemnify because its policy excluded coverage for injuries sustained from the use of an amusement device. Consequently, Great American denied any duty to defend or indemnify, claiming that its policy provided the same coverage as the underlying coverage from Virginia Surety.

After Virginia Surety and Great American denied any duty to defend or indemnify, the parents and CPB entered into a section 537.065 agreement. That statute provides, in relevant part:

> Any person having an unliquidated claim for damages against a tort-feasor, on account of bodily injuries or death, may enter into a contract with such tort-feasor or any insurer in his behalf or both, whereby, in consideration of the payment of a specified amount, the per-

son asserting the claim agrees that in the event of a judgment against the tort-feasor, neither he nor any person, firm or corporation claiming by or through him will levy execution, by garnishment or as otherwise provided by law, except against the specific assets listed in the contract and except against any insurer which insures the legal liability of the tort-feasor for such damage and which insurer is not excepted from execution, garnishment or other legal procedure by such contract. Execution or garnishment proceedings in aid thereof shall lie only as to assets of the tort-feasor specifically mentioned in the contract or the insurer or insurers not excluded in such contract.

Section 537.065. CPB and the parents agreed that if a judgment was entered against CPB, the parents would limit any recovery to the insurance policies. There was no agreement concerning CPB's liability or the damages. Instead, those matters would be submitted to the trial court.

At a bench trial, the parents introduced evidence regarding their damages and CPB's liability. CPB neither objected to the entry of evidence nor offered any defense. The court entered judgment finding that CPB was liable for Christine's death and found the parents' damages to be $4,580,076. There was no appeal of this judgment.

The parents filed a section 379.200 equitable garnishment lawsuit against Virginia Surety and Great American to recover the judgment from CPB's insurance policies. The parents filed a motion for summary judgment, arguing that Virginia Surety's amusement device exclusion was not applicable to a rock climbing wall. The equitable garnishment court considered Virginia Surety's argument that the exclusion ap-

---

**3.** Virginia Surety was formerly known as Combined Specialty Insurance Company.

plied but ultimately concluded that a rock climbing wall was not an amusement device.

Subsequent to the equitable garnishment court's decision, Virginia Surety and the parents entered into a settlement agreement. In exchange for $700,000, the parents agreed to release their claims against Virginia Surety to the full extent of the policy limit, $1 million. Pursuant to the settlement, the parents released their claims against Virginia Surety and filed a partial satisfaction of judgment in the sum of $1 million.

The parents proceeded with the equitable garnishment lawsuit against Great American for the remaining liability of $2,880,076.[4] The court held a two-day evidentiary hearing to resolve three issues: (1) whether the judgment in favor of the parents stands and, if it does, whether Great American was bound to it; (2) if the judgment in favor of the parents does not stand, the amount of a reasonable judgment; and (3) whether the Great American policy covers the judgment. At the conclusion of the hearing, the equitable garnishment court entered its final order, upholding the judgment insofar that it found CPB liable. However, the court concluded that the judgment was unreasonable because it awarded $4,580,076 damages; reasonable damages, according to the court, were $2.2 million. The court further decided that the Great American policy did not cover the $2.2 million judgment. It reasoned that because the parents settled their claim against Virginia Surety for $700,000, the Virginia Surety policy was not exhausted to its limit of $1 million so that the Great American policy did not apply.

This Court granted transfer after disposition by the court of appeals. Jurisdiction is vested in this Court pursuant to article V, section 10 of the Missouri Constitution.

## II. Standard of Review

■■■■ This Court reviews the equitable garnishment court's decision using the standard set forth in *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). The judgment will be affirmed unless there is no substantial evidence to support it or unless it is against the weight of the evidence, it erroneously declares the law, or it erroneously applies the law. *Id.* at 32. This Court will reverse the judgment as against the weight of the evidence with caution and with a firm belief that the judgment is wrong. *Id.*

■■■■ This case also involves the interpretation of an insurance contract and a statute. Such interpretations are questions of law that are reviewed *de novo*. *D.R. Sherry Constr., Ltd. v. Am. Family Mut. Ins. Co.*, 316 S.W.3d 899, 902 (Mo. banc 2010); *Spradling v. SSM Health Care St. Louis*, 313 S.W.3d 683, 686 (Mo. banc 2010).

## III. Insurance Contract Provisions

The parents and Great American challenge two aspects of the insurance contracts. The parents claim that the Great American policy does not require exhaustion as a prerequisite to its obligation to pay. Great American argues that the amusement device exclusion in the Virginia Surety policy applies so that injuries sustained from a portable rock climbing wall are not covered.

■■■■ When interpreting the terms of an insurance policy, this Court applies the

---

**4.** The remaining liability of $2,880,076 took into account the $1 million partial satisfaction in judgment that was entered in exchange for

Virginia Surety's $700,000 settlement and the $700,000 settlement with Floyd.

meaning that would be understood by an ordinary person of average understanding purchasing the insurance. *Seeck v. Geico Gen. Ins. Co.,* 212 S.W.3d 129, 132 (Mo. banc 2007). If the policy is ambiguous, it will be construed against the insurer. *Id.* A policy is ambiguous if "there is duplicity, indistinctness, or uncertainty in the meaning of the language in the policy." *Id.* If the policy is unambiguous, the policy will be enforced according to its terms. *Id.*

### A. Settlement as Exhaustion

■ The parents claim that the equitable garnishment court erred in finding that their settlement with Virginia Surety did not constitute exhaustion, as required by the Great American policy.

■ It has been long recognized that parties to an insurance contract are free to define when an underlying insurance policy is exhausted so that the excess carrier's obligation to pay is triggered. *See Handleman v. U.S. Fidelity & Guaranty Co.,* 223 Mo.App. 758, 18 S.W.2d 532, 534 (1929). The parties dispute whether Great American's duty to indemnify arises when Virginia Surety *actually pays* the full amount of its policy. Instead, the parents argue, the plain language of the Great American policy creates the liability to pay once the underlying insurance is *obligated to pay* the full amount of the underlying insurance.

To support their argument, the parents rely on the provision in the Great American policy that describes "When 'Loss' is Payable," which states:

> Coverage under this policy will not apply unless and until the Insured or the Insured's "underlying insurance" is obli-

gated to pay the full amount of the "Underlying Limits of Insurance." [5]

> When the amount of "loss" has finally been determined, we will promptly pay on behalf of the insured the amount of "loss" falling within the terms of the policy.

This provision indicates that Great American will pay the amount of "loss" falling within the terms of the policy as long as two requirements are met: (1) the insured or the insured's underlying coverage is *obligated to pay* the full amount of its underlying limits of insurance; and (2) the amount of loss must be finally determined. Once those requirements are met, Great American will "promptly pay" the amount of loss falling within the terms of the policy.

The equitable garnishment court erred in determining that the Great American policy did not cover the parents' claim because the Virginia Surety policy was not exhausted. The Great American policy clearly states that its coverage will apply when the underlying insurer *is obligated to pay* the full amount of the underlying limits of insurance. "Obligated to pay" has a different meaning than "has already paid." Further, contrary to Great American's arguments, there are no other provisions in its insurance policy that require exhaustion of the underlying insurance.

Great American relies on the provision that sets forth how its limits of insurance will apply. That provision provides, in relevant part:

> 4. Subject to Paragraphs B.2. and B.3. above, if the "Underlying Limits of Insurance" ... are either reduced or exhausted solely by payment of "loss," such insurance provided by this policy will apply in excess of the reduced un-

---

**5.** "Underlying Limits of Insurance" is defined as "the total sum of the limits of all applicable 'underlying insurance' ..., including self-in-

surance or means other than insurance." Here, the underlying limits of insurance were $1 million.

derlying limit or, if all underlying limits are exhausted, will apply as "underlying insurance" subject to the same terms, conditions, definitions and exclusions of the "first underlying insurance," except for the terms, conditions, definitions of exclusions of this policy.

However, we will not pay that portion of a "loss" that is within the "Underlying Limits of Insurance" which the insured has agreed to fund by self-insurance or means other than insurance.

It argues that "exhausted solely by payment of 'loss'" mandates that the underlying limits of insurance must be fully exhausted by cash payment before Great American is obligated to pay. This argument ignores that the complete phrase is "if the "Underlying Limits of Insurance" . . . are *either reduced or exhausted* solely by payment of 'loss.'" (emphasis added). The portion of the policy on which Great American relies contemplates that the underlying limits of insurance may be reduced rather than exhausted.

Further, the second paragraph of the provision refers to " 'loss' that is within the 'Underlying Limits of Insurance' which the insured has agreed to fund by self-insurance or *means other than insurance.*" (emphasis added). That phrase indicates that the policy recognized that the underlying limits of insurance may be fulfilled by something other than insurance. Here,

the underlying limits of insurance were met by a settlement that consisted of a $700,000 payment and a $300,000 release, totaling $1 million. The phrase "means other than insurance" expressly contemplated the situation at hand.

Great American also incorrectly relies on cases from other jurisdictions that have rejected settlements that stipulate exhaustion without paying the full underlying limits. The policy language in each case that it relies on is distinguishable from the policy language at issue in this case and is not persuasive authority.[6]

■ Courts must interpret an insurance policy as written, not as the insurance company wishes it were written. Here, the policy was unambiguous—Great American's obligation to pay claims was not dependent on the underlying insurer exhausting its limits. The two requirements for Great American to "promptly pay" occurred once Virginia Surety was obligated to pay the full amount of the underlying limits of insurance and the amount of loss was finally determined. The policy contains no requirement that the underlying limits of insurance must be exhausted. The equitable garnishment court erred in finding otherwise.

### B. Amusement Device Exclusion

■ Great American argues in its cross-appeal that the equitable garnish-

---

**6.** Great American cites *Comerica Inc. v. Zurich American Insurance Co.*, 498 F.Supp.2d 1019 (E.D.Mich.2007), *Citigroup, Inc. v. National Union Fire Insurance Co.*, 2010 WL 2179710, No. H–06–3666 (S.D.Tex., filed May 28, 2010), and *Trinity Homes LLC v. Ohio Casualty Insurance Co.*, 2009 WL 3163108, No. 1:04–cv–1920–SEB–DML (S.D.Ind., filed Sept. 25, 2009), *rev'd*, 629 F.3d 653 (7th Cir. 2010). Unlike the Great American policy, the excess policies in these three cases clearly provided that excess policies would not apply until the underlying policy had been paid to its total liability limit. *See Comerica*, 498

F.Supp.2d at 1032 (finding that the excess policy required "actual payment of losses" before it would apply); *Citigroup*, 2010 WL 2179710 at *2 (holding that the plain language of the excess policy provided that it did "not apply until the underlying policy has actually been paid to the total of its liability limit"); *Trinity Homes*, 2009 WL 3163108 at *11–12 (holding that the contract's language was clear in that the excess insurer's obligation to pay did not arise until "the limits of 'underlying insurance' [were] *exhausted* by payment of claims").

ment court erred in granting partial summary judgment in favor of the parents because the amusement device exclusion encompassed the rock climbing wall. It disputes the court's finding that the rock climbing wall was not a "ride," as the term was used in the definition of "amusement device."

Virginia Surety's policy excludes coverage for incidents "[a]rising out of the ownership, operation, maintenance or use of any amusement device." The policy defines "amusement device" as ".any device or equipment a person rides for enjoyment, including, but not limited to, any mechanical or non-mechanical ride, water slide (including any ski or tow when used in connection with a water slide), bungee operation or equipment."

In granting partial summary judgment in favor of the parents, the equitable garnishment court concluded that, despite the parties' disagreement over the interpretation of the language, the amusement device exclusion was unambiguous. The court found that the definition of "amusement device" was clear in that it is applied to any "ride." Based on the definition, the court determined that a rock climbing wall was not a "ride," so the exclusion did not apply.

The amusement device exclusion is unambiguous. Although Virginia Surety's policy excludes incidents arising out of the "ownership, operation, maintenance or use of any amusement device," the policy's definition of amusement device has a key component: a person must "ride" the device for enjoyment. "Ride" is not defined in the policy, so it is necessary to use the ordinary meaning of the word, as set forth in the dictionary. *Martin v. U.S. Fid. & Guar. Co.*, 996 S.W.2d 506, 508 (Mo. banc 1999).

As used in the definition of "amusement device," "ride" is a verb. The verb is defined as "to travel or become conveyed by a vehicle (as a carriage, an automobile, or a railroad train): become carried." Webster's Third New International Dictionary Unabridged 1952 (1993).

"Ride" indicates that the participant does not primarily supply the physical exertion to move. Instead, another force, whether mechanical or non-mechanical, primarily creates the movement. A person does not "ride" a portable rock climbing wall. A participant climbs it, supplying the physical exertion for the movement. Because a rock climbing wall does not require the participant to "ride" it, it is not an "amusement device" under the policy. The court properly found the exclusion does not apply.

## IV. Applicability of the Gulf Insurance Test

 The parents argue that the equitable garnishment court erred in ruling that the $4,580,076 judgment was subject to the *Gulf Insurance* test. They claim that the test is inapplicable because, by its very terms, it only applies to determine the reasonableness of settlements. Great American, on the other hand, contends that applying the *Gulf Insurance* test to the $4,580,076 judgment was appropriate because it was the result of a settlement, not a trial on the merits.

 In *Gulf Insurance*, this Court held that "a reasonableness standard is appropriate in determining the enforceability of section 537.065 settlements." 936 S.W.2d at 815. A settlement is reasonable if it is what "a reasonably prudent person in the position of the defendant would have settled for on the merits of the plaintiff's claim." *Id.* at 816. The requirement of reasonableness strikes the appropriate balance between the interests of the insurer and the interests of the insured.

*Id.* at 815–16. If the insurer refuses to defend, section 537.065 allows the insured to enter an agreement to limit its exposure to liability to the insurance policies. *Id.* at 816. The test of reasonableness ensures that the insurer will not have to pay a settlement that is unreasonable in proportion to the damages incurred. *Id.*

The *Gulf Insurance* test only applies to section 537.065 settlements. The award of damages in this case was a judgment entered after a bench trial, yet Great American argues that this "trial" lacked any semblance of an adversarial proceeding because CPB did not present a defense. What Great American ignores is that it had an opportunity to present a defense but declined to do so. CPB entered into a section 537.065 agreement to limit its exposure to liability. The agreement did not admit liability or damages; instead, it simply limited the collection of any judgment against CPB to the insurance polices.

The structure of the section 537.065 agreement actually gave Great American more protection than a settlement that admitted liability and determined damages. The parents still had the burden to prove liability and damages in a bench trial. Although the trial court found CPB liable and awarded the parents $4,580,076 in damages, it could have found that CPB was not liable or that no damages were suffered. The judgment here is not a settlement and is not subject to the *Gulf Insurance* reasonableness test.

Further, Great American's proposed application of the *Gulf Insurance* test is inconsistent with the doctrine of collateral estoppel. If Great American's proposed application of the *Gulf Insurance* test is accepted, it will encourage insurers to refuse to defend on behalf of insureds. The insured, unwilling to expose itself to liabili-

ty beyond the insurance policy, will enter into a section 537.065 agreement limiting any collection of damages. Once the trial court renders its judgment and the plaintiff files an equitable garnishment lawsuit against the insurer, the insurer will challenge the trial court's finding of liability and damages. Then, the plaintiff will be forced to re-litigate the entire case for the equitable garnishment court so that it can determine whether the judgment was reasonable. The result of Great American's proposed application of the *Gulf Insurance* test is that all insurers would receive "two bites of the apple"—once when the trial court determines liability and damages and once when the equitable garnishment court determines reasonableness. The court erred in applying the *Gulf Insurance* test and determining reasonableness of the judgment.

## V. Unjustifiable Refusal to Defend

 Great American claims that the equitable garnishment court erred in ruling that it was bound by the $4,580,076 judgment. It asserts that, in order for an insurer to be bound by a section 537.065 agreement that the insured entered, the insurer must have unjustifiably refused to defend or provide coverage. Great American argues that it was not bound by CPB's section 537.065 agreement with the parents because its refusal was justified.

 " 'Where one is bound to protect another from liability, he is bound *by the result of the litigation* to which such other is a party, provided he had opportunity to control and manage it.' " *Drennen v. Wren,* 416 S.W.2d 229, 234–35 (Mo.App. 1967) (quoting *Listerman v. Day & Night Plumbing & Heating Serv.,* 384 S.W.2d 111, 118–19 (Mo.App.1964)).[7] The stan-

---

7. Great American argues that *Drennen* is in- applicable because, in that case, the insur-

dard is whether the insurer had the *opportunity* to control and manage the litigation, not whether the insurer had the *duty* to control and manage the litigation.

As CPB's insurer, Great American was bound to protect CPB from liability. Although Great American claimed that it was not bound to cover Christine's accident because its policy did not include accidents arising out of the use of an amusement device, these assertions of non-coverage were incorrect. As noted above, the trial court correctly found that a rock climbing wall was not an amusement device so that the exclusion did not apply. This finding rendered Great American's refusal to defend or to provide coverage unjustified.

■■■ Despite being bound to protect CPB, Great American, on more than one occasion, refused to defend and to provide coverage. Once an insurer unjustifiably refuses to defend or provide coverage, the insured may, without the insurer's consent, enter an agreement with the plaintiff to limit its liability to its insurance policies. *Cf. Rinehart v. Anderson*, 985 S.W.2d 363, 371 (Mo.App.1998) (recognizing that once an insurer unjustifiably refuses to defend or provide coverage, the insured is free to enter a settlement that releases it from liability). "[The insurer] cannot have its cake and eat it too by both refusing coverage and at the same time continuing to control the terms of settlement in defense of an action it had refused to defend." *Id.*

■■■ CPB entered into a section 537.065 agreement with the parents that limited the collection of any judgment entered against it to the insurance policies. Great American was bound to the section 537.065 agreement because it unjustifiably refused to defend or provide coverage. Its claim that its refusals were an honest mistake is of no consequence. "That the refusal of the insurer to defend on the ground that the claim is outside the policy is an honest mistake, nevertheless constitutes an unjustified refusal and renders the insurer liable to the insured for all resultant damages from that breach of contract." *Whitehead v. Lakeside Hosp. Ass'n*, 844 S.W.2d 475, 481 (Mo.App.1992).

Great American's refusal to defend and to provide coverage, while it may have been an honest mistake, was unjustified. Accordingly, CPB was free to enter a section 537.065 agreement that limited collection of a future judgment to its insurance policies. Great American was bound to the section 537.065 agreement because it unjustifiably refused to defend, and it was bound to the trial court's judgment awarding the parents $4,580,076 because it had an opportunity to control and manage the trial but failed to seize it.[8]

ance company had an obligation to defend. Its assertion is too broad; an insurance company is bound by the result of the litigation *if it is bound to protect the insured from liability*. *Drennen*, 416 S.W.2d at 234–35. *Drennen* provides that Great American was bound by the result of the litigation because it had an opportunity to control and manage the parents' suit against CPB.

8. Great American also argues that its policy prohibited CPB from entering into a section 537.065 agreement. The policy states, in relevant part: "There will be no right of action against us under this Insurance unless ... the amount you owe has been determined by set-tlement with our consent or by actual trial and final judgment." This argument fails. As outlined above, an insured may, without the consent of the insurer, enter a section 537.065 agreement if the insurer has unjustifiably refused to defend or to provide coverage. Further, the insurance policy's provision Great American cites does not provide support for its argument. The provision describes when an insured may bring a cause of action against Great American. It does not concern when an insured may enter into an agreement with the plaintiff. Even if this provision were applicable, a suit against Great American is allowed in that the judg-

## VI. Conclusion

The judgment is reversed insofar as the Great American policy does not require exhaustion in order for its obligation to pay to be triggered and the prior judgment is not subject to a reasonableness test. In all other respects, the judgment is affirmed. The case is remanded.

All concur.

ment was rendered after an actual trial on the issue of liability and damages.