# United States Court of Appeals
## For the Eighth Circuit

_____

No. 12-3546
_____

Union Electric Company, doing business as Ameren UE

*Appellee*

v.

AEGIS Energy Syndicate 1225

*Appellant*

_____

Appeal from United States District Court
for the Eastern District of Missouri

_____

Submitted: April 8, 2013
Filed: April 19, 2013
[Published]

_____

Before BYE, ARNOLD and BENTON, Circuit Judges.

_____


PER CURIAM.

AEGIS Energy Syndicate 1225, an insurer, appeals from the denial by the district court[1] of its motion to compel alternative dispute resolution in its dispute with Union Electric Company (UEC).  We affirm.

UEC purchased an excess insurance policy from AEGIS and filed suit to recover on the policy after an accident at its Taum Sauk hydroelectric power plant in Missouri.  The main body of the policy prescribes a three-step process to resolve disputes:  first negotiation, then mediation, and last arbitration.  One of the provisions of the policy, Condition M, states:  "Any controversy or dispute arising out of or relating to this ... AEGIS POLICY, or the breach, termination, or validity thereof, which has not been resolved by non-binding means ... shall be settled by binding arbitration."  The condition also provides that the "Policy shall be governed by the laws of the state of Missouri."  An endorsement to the contract, however, provides:

> Notwithstanding anything contained in this Policy to the contrary, any dispute relating to this Insurance or to a CLAIM (including but not limited thereto the interpretation of any provision of the Insurance) shall be governed by and construed in accordance with the laws of the State of Missouri and each party agree [sic] to submit to the jurisdiction of the Courts of the state of Missouri.

In determining whether parties agreed to mandatory arbitration, we apply "[o]rdinary state law contract principles," *see Keymer v. Management Recruiters Int'l, Inc.*, 169 F.3d 501, 504 (8th Cir. 1999), and here we apply Missouri contract law because the parties agreed in the body of the contract and in the endorsement to interpret the agreement in accordance with Missouri law.  We thus "read the policy as a whole to determine the parties' intent and give the policy language used its plain and ordinary meaning."  *Grissom v. First Nat'l Ins. Agency*, 371 S.W.3d 869 (Mo. Ct.

[1]The Honorable Jean C. Hamilton, United States District Judge for the Eastern District of Missouri.

App. 2012). Endorsements, of course, supplant conflicting general provisions in the main body of a contract. *See Abco Tank & Mfg. Co. v. Federal Ins. Co.*, 550 S.W.2d 193, 198 (Mo. 1977); *Hendricks v. Curators of Univ. of Mo.*, 308 S.W.3d 740, 746 (Mo. Ct. App. 2010). A provision in an insurance "policy is ambiguous if there is duplicity, indistinctness, or uncertainty in the meaning of the language in the policy," and ambiguous provisions are construed against the insurer. *Schmitz v. Great Am. Assur. Co.*, 337 S.W.3d 700, 706 (Mo. 2011) (internal quotation marks and citation omitted).

AEGIS asserts that the endorsement only complements Condition M's mandatory arbitration provision. In support of this reading, AEGIS points out that the endorsement "does not contain any language indicating that it replaces a particular provision of the contract," as "it does not contain any reference to dispute resolution procedures generally, arbitration specifically, or any other indication of *how* policy disputes are to be resolved" (emphasis in original). AEGIS contends that the endorsement was meant to give Missouri courts personal jurisdiction over both parties, and then only to enforce the arbitration provision. It argues that the district court did not attempt to reconcile the endorsement with the condition, contravening the general legal principle that courts must give "meaning to all terms and, where possible, harmonize those terms in order to accomplish the intention of the parties." *See Henges Mfg., LLC v. Amerisure Ins. Co.*, 5 S.W.3d 544, 545 (Mo. Ct. App. 1999). In particular, AEGIS maintains that the district court failed to heed the admonition that "endorsements and language in the body of the policy ... should be construed together unless they are in such conflict they cannot be reconciled," *Shelter Mut. Ins. Co. v. Sage*, 273 S.W.3d 33, 37 (Mo. Ct. App. 2008).

UEC, on the other hand, maintains that the endorsement's plain language gives Missouri courts jurisdiction over all disputes related to the policy, thus replacing the mandatory arbitration provision, and that in adopting the endorsement the parties intended to conform the policy to Missouri law, which prohibits mandatory

arbitration provisions in insurance contracts, *see* Mo. Ann. Stat. § 435.350; *Standard Sec. Life Ins. Co. of New York v. West*, 267 F.3d 821, 824 (8th Cir. 2001) (per curiam). They point out that AEGIS's argument that the parties intended the endorsement to give Missouri courts personal jurisdiction over them for enforcing the arbitration provision is illogical because a Missouri statute already gives Missouri courts jurisdiction over AEGIS regarding disputes over its insurance contract, *see* Mo. Ann. Stat. § 506.500.1(5), and UEC is, in the words of the district court, "a Missouri public utility with its headquarters and principal place of business in St. Louis, Missouri," over which Missouri courts plainly have personal jurisdiction.

Although AEGIS's proposed interpretation of the endorsement's language and the parties' intent may not be entirely implausible in the abstract, we agree with the district court that by agreeing in the endorsement "to submit to the jurisdiction of the Courts of the state of Missouri," AEGIS has agreed to have, in words near the endorsement's beginning, "any dispute relating to this Insurance or to a CLAIM" resolved in those courts. The endorsement thus entirely supplants the condition's mandatory arbitration provision. And we do not see how the lack of reference in the endorsement to particular modes of dispute resolution shows that the parties did not intend to replace the mandatory arbitration provision in the policy; to the contrary, we think it highly revealing that the endorsement nowhere indicates an intent that the grant of jurisdiction that it contains refers only to pre- or post-arbitration enforcement. Even if the policy as a whole were ambiguous as to the mandatory arbitration, and we think it is not, UEC would still prevail because it would be entitled to have the ambiguity resolved in its favor, *see Schmitz*, 337 S.W.3d at 706.

Affirmed.

_____

-4-