

# In the Missouri Court of Appeals
# Eastern District
### DIVISION FOUR

| | | |
|---|---|---|
| BRITTANY HUNTER, . | ) | No. ED101338 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of City of St. Louis |
| vs. | ) | |
| | ) | |
| CHARLES MOORE, SR., | ) | Honorable David L. Dowd |
| | ) | |
| Appellant. | ) | |
| | ) | FILED: April 14, 2015 |

Charles Moore, Sr. ("Appellant") appeals from the trial court's judgment ordering reformation and specific performance under an agreement pursuant to Section 537.065, RSMo (2000), which allows a claimant and tortfeasor to contract to limit recovery to specified assets or an insurance contract. The reformed agreement required Appellant to agree to a consent judgment or to have an uncontested hearing on liability and damages to prohibit American Family Mutual Insurance Company ("American Family") from controlling the defense in a pending personal injury case brought by Brittany Hunter ("Respondent") against Appellant. We reverse and remand.

### I.  Background

On March 27, 2012, Respondent brought suit in Franklin County against the Delta Motel and others, including Appellant, seeking recovery as a result of being raped and sexually

assaulted at the Delta Motel.  Appellant was the motel manager at the time of the assault, and Respondent generally alleged negligence and other wrongful conduct by Appellant and others that caused or contributed to her sexual assault.

American Family insured the Delta Motel and was tasked to provide a defense and indemnity of Respondent's lawsuit for both the motel and Appellant.  American Family filed a Second Amended Petition for Declaratory Judgment on April 5, 2012, and added Appellant as a defendant in this action.  American Family then sent Appellant a reservation of rights letter notifying him it would defend him in the Franklin County action, but that it would not indemnify him against any judgment due to two exclusions in his policy.[1]  Appellant then hired Patrick Horsefield ("Horsefield") in April 2012, and a month later Horsefield sent American Family a letter on behalf of Appellant informing it that Appellant refused and rejected American Family's defense in the Franklin County litigation and requesting that American Family withdraw its reservation of rights and dismiss Appellant from the declaratory judgment action.

American Family sent Appellant a letter on June 1, 2012, stating that it was withdrawing its limited defense and reservation of rights and agreeing to dismiss Appellant from the declaratory judgment action.  Appellant, however, was not dismissed from the declaratory judgment action prior to American Family subsequently filing a motion for summary judgment requesting judgment be entered in its favor, finding that "no coverage exists" for Appellant.  In a letter dated September 4, 2012, Horsefield informed American Family that Appellant had entered into a settlement agreement (the "537 Agreement") with Respondent.  After having filed its motion for summary judgment, American Family received this letter and finally dismissed

---

[1] American Family's two cited exclusions were the "expected or intended injury" and the "Abuse or Molestation Exclusion."

Appellant, albeit without prejudice, from the declaratory judgment action on September 10, 2012.

The 537 Agreement provides that at the time of the alleged negligence at the Delta Motel, Appellant was insured under a policy issued by American Family, and that Respondent would only seek satisfaction under the policy, unless Appellant's income exceeded $50,000 in any calendar year. The agreement also provided that Appellant was obligated to authorize and empower Respondent's counsel, James O'Leary, to pursue all claims against American Family, that Appellant would cooperate in those claims, and that any proceeds from those claims would be divided equally among Appellant and Respondent, unless the 50% Appellant recovered exceeded the amount necessary to satisfy any judgment in the underlying lawsuit.

One key point of contention between the parties is whether the following paragraph was included in the agreement:

> The parties further agree that in the event of a global settlement of all claims, including the underlying litigation and the claims for bad faith failure to settle, bad faith failure to defend and indemnify, and any other claim filed by Moore against American Family, plaintiff shall receive full compensation, plus interests and costs awarded plaintiff, set forth in any underlying judgment in the lawsuit before the parties split the proceeds from any settlement, verdict or judgment against American Family pursuant to the terms of paragraph 2 herein.

O'Leary's original proposed agreement included this paragraph, but Horsefield testified that he deleted this paragraph from the version he recommended to Appellant and had Appellant sign. O'Leary testified that he "may have" taken Appellant's signature from the revised version of the 537 Agreement Horsefield sent him and attached it to his version of the agreement.

The second key point of contention between the parties is whether or not the 537 Agreement required Appellant to concede liability or submit to a non-contested trial. Horsefield testified that he believed and intended there would still be a trial on liability and damages, while

3

O'Leary testified that he certainly intended for Appellant to submit to a non-contested trial and not cross-examine Respondent's liability and damage experts. O'Leary did admit that the 537 Agreement "doesn't specifically say" that there will be an uncontested hearing on liability and damages in Franklin County in the underlying case.

Ultimately the trial court entered judgment in favor of Respondent, reforming the 537 Agreement by removing the paragraph quoted above and adding two provisions. The added provisions required Appellant to not allow American Family to have control over the defense of the underlying liability case, and required Appellant to cooperate with Respondent in that case, either by agreeing to a consent judgment or by having an uncontested hearing on liability and damages. This appeal follows.

## II. Discussion

Appellant lists only one point relied on in his brief, although within that point, several issues are raised.[2] The first point we will address is Appellant's contention that the trial court erred in ordering specific performance of the 537 Agreement and in reforming its terms because no valid agreement existed. Appellant argues that because American Family had withdrawn its reservation of rights letter and was no longer unjustifiably refusing to defend him in the Franklin County case, the 537 Agreement was not valid and enforceable.

Appellant also contends the trial court erred in enforcing and reforming the 537 Agreement because Respondent failed to prove by clear and convincing evidence that the parties intended to include the added terms, or that they were absent due to mutual mistake.

Standard of Review

---

[2] We would like to remind Appellant that using multifarious points in briefing to this court is improper. "Improper points relied on, including multifarious points, preserve nothing for appellate review. However, we may review a multifarious point ex gratia, and we choose to do so here." Barnett v. Rogers, 400 S.W.3d 38, 47 (Mo. App. S.D. 2013) (internal quotations omitted).

4

We will affirm the trial court's judgment enforcing and reforming the 537 Agreement unless it lacks substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. Schmitz v. Great Am. Assurance Co., 337 S.W.3d 700, 705 (Mo. banc 2011) (citing Murphy v. Carron, 536 S.W.2d 30 (Mo. banc 1976)). "Because specific performance is an equitable remedy, we will afford the trial court great deference in granting [an action] to enforce settlement." St. Louis Union Station Holdings, Inc. v. Discovery Channel Store, 301 S.W.3d 549, 551 (Mo. App. E.D. 2009).

Validity of the 537 Agreement

Section 537.065 of the Revised Missouri Statutes allows for a claimant and tortfeasor to contract to limit recovery to specified assets or an insurance contract. "Where one is bound to protect another from liability, he is bound by the result of the litigation to which such other is a party, provided he had opportunity to control and manage it." Schmitz, 337 S.W.3d at 710, quoting Drennen v. Wren, 416 S.W.2d 229, 234-35 (Mo. App. 1967) (internal quotations omitted). So our standard is whether American Family "had the opportunity to control and manage the litigation, not whether [it] had the duty to control and manage the litigation." Schmitz, 337 S.W.3d at 710.

If an insurer unjustifiably refuses to defend or provide coverage, the insured may enter an agreement with the plaintiff to limit its liability to the insured's policy. Id. "[The insurer] cannot have its cake and eat it too by both refusing coverage and at the same time continuing to control the terms of settlement in defense of an action it had refused to defend." Id.

When, as here, the insured (Appellant) refuses to accept the insurer's (American Family's) defense under a reservation of rights, "the insurer has three options: '(1) it may represent the insured without a reservation of rights; (2) it may withdraw from representing the insured

5

altogether; or (3) it may file a declaratory judgment action to determine the scope of [the] policy's coverage.'" Auto-Owners Ins. Co. v. Ennulat, 231 S.W.3d 297, 305 (Mo. App. E.D. 2007) (quoting Truck Ins. Exch. V. Prairie Framing, LLC, 162 S.W.3d 64, 88 (Mo. App. W.D. 2005)). Choosing option three, as American Family did here, is a "risky" decision "because it is treated as a refusal to defend the insured, and, if unjustified, the insurer is treated as if it waived any control of the defense and rights to participate in the underlying tort action." Id.

Here, American Family filed a motion for summary judgment against Appellant in the declaratory judgment action on August 20, 2012. American Family had promised to dismiss Appellant from the declaratory judgment action, but had not done so by the time it filed its motion for summary judgment. At this point Appellant and Horsefield negotiated and agreed to the 537 Agreement at issue, notifying American Family of the agreement in a letter dated September 4, 2012. Only after the fact did American Family finally dismiss Appellant from the declaratory judgment action as promised, and even then it dismissed Appellant without prejudice, leaving open the possibility of re-filing the claim against Appellant down the road.

There is substantial evidence in the record to support the trial court's finding that, at the time the parties entered into the 537 Agreement, American Family was unjustifiably refusing to defend Appellant in the underlying action, and thus Appellant was free to enter into the 537 Agreement. This point is denied.

Reformation of the 537 Agreement

Appellant's second issue alleges that the trial court erred in reforming and enforcing the 537 Agreement because Appellant did not agree to the added terms and they were not absent from the agreement due to mutual mistake.

6

The party seeking reformation must prove by clear, cogent and convincing evidence that the instrument fails to reflect the underlying agreement between the parties due to fraud, mutual mistake or other grounds satisfying the requirements for equitable relief. Brennan v. Missouri State Emp's Ret. Sys., 734 S.W.2d 230, 232 (Mo. App. W.D. 1987). "For reformation on grounds of mistake, the primary factual issues to be established are the existence of a prior agreement and mutual mistake." Everhart v. Westmoreland, 898 S.W.2d 634, 637 (Mo. App. W.D. 1995). "The party seeking reformation need not show agreement on any particular words or language but must only show agreement to accomplish a particular object," and the mistake must be mutual and common to both parties. Id. The writing must fail to set forth the intended terms of the agreement and fail to incorporate the parties' true intentions. Id.

There is no dispute that the 537 Agreement that Respondent seeks to enforce does not contain any language which required Appellant to agree to a consent judgment or to submit to an uncontested hearing on liability and damages. Appellant was required to "cooperate" in pursuit of claims against American Family and give Respondent her fair share of any proceeds, but nowhere in the 537 Agreement is Appellant required to prohibit American Family from defending him or to submit to a consent judgment or uncontested hearing. The trial court found that Respondent showed by clear, cogent, and convincing evidence that the paragraph quoted above, regarding Respondent receiving compensation and fees before any split of proceeds, was not meant to be included in the agreement, that the parties mutually agreed to not allow American Family to defend Appellant in the underlying case, and that Appellant would either agree to a consent judgment or submit to an uncontested hearing on liability and damages. We do not believe Respondent met her burden in justifying reformation of the 537 Agreement.

7

"'[A] mutual mistake occurs when both parties, at the time of contracting, share a misconception about a basic assumption or vital fact upon which they based their bargain.'" Alea London ltd. V. Bono-Soltysiak Enter.'s, 186 S.W.3d 403, 415 (Mo. App. E.D. 2006) (quoting 27 Williston on Contracts, 4th ed., Section 70:107, p. 536). In other words, reformation is proper only when the instrument reflects what neither party intended. Galemore v. Haley, 471 S.W.2d 518, 524 (Mo. App. 1971). This is not the case here. O'Leary testified that it was his understanding that he and Horsefield had agreed in their negotiations to prohibit American Family from defending Appellant and to have Appellant submit to a consent judgment or uncontested hearing on liability and damages. However, Horsefield testified that this was not his understanding of their discussions, and none of the emails the two sent each other mention these provisions.[3] Further, Appellant and Horsefield testified that it was never their intention to submit to a consent judgment or an uncontested hearing on liability and damages, and Appellant made clear he did not want to pay Respondent anything.

Also, O'Leary claimed that the very nature of an agreement under Section 537.065, was that Appellant would confess judgment:

> It's a 537.065. By the spirit of the statute and the case law that interprets that, it's an understanding that they absolutely have no right to control it. That's one of the benefits to the injured victim to enter into these type[s] of arrangements. When there's been an improper denial of defense or DJ action. That's why the statute's there.

Contrary to O'Leary's testimony, an agreement under Section 537.065 does not require either party to agree to a consent judgment or admit liability. The Supreme Court of Missouri makes this clear during its fact recitation in Schmitz: "CPB and the parents agreed that if a judgment

---

[3] Horsefield did send a letter to Gene Hou and John Sanner of American Family on September 4, 2012, in which Horsefield mentioned that Appellant no longer trusted Sanner or American Family and wanted him to withdraw from the Franklin County case. However, the letter also mentions the 537 Agreement, and there is no indication that this desire to have Sanner withdraw as counsel was contained in or stemmed from the 537 Agreement itself.

8

was entered against CPB, the parents would limit any recovery to the insurance policies. There was no agreement concerning CPB's liability or the damages. Instead, those matters would be submitted to the trial court." 337 S.W.3d at 704. This is directly analogous to the fact scenario present here – the parties agreed to limit any potential recovery to an insurance policy, but did not make any agreement as to liability or damages. Therefore, O'Leary was mistaken in his testimony that it was "understood" that there would be an uncontested hearing. We find that there was no mutual mistake in putting the parties' agreement into writing, and thus the trial court granting reformation of the agreement was improper and against the weight of the evidence. Appellant's point is granted.

### III. Conclusion

We reverse and remand to the trial court for further proceedings consistent with this opinion.

 

 

 

_____
ROY L. RICHTER, Judge

Patricia L. Cohen, P.J., concurs
Robert M. Clayton III, J., concurs