*562 KELLY, Circuit Judge.
Dale and Kira Neidenbach appeal the district court’s grant of summary judgment in. favor of Arnica Mutual Insurance Company (Arnica). The Neidenbachs allege that a fire caused significant damage to their house and personal property. They contend that their insurance policy from Arnica covered the damage, but that Arnica refused to pay the claim. The district court[1] concluded that the insurance policy was void under its terms because the Neidenbachs made material misrepresentations during the claims process. Accordingly, the court granted summary judgment in favor of Arnica. We affirm.
I.Background
The Neidenbachs were named insureds on a homeowner insurance policy issued by Arnica. The effective dates of the policy were May 8, 2012, through May 8, 2013. The policy provided, in part,
R. Concealment or Fraud
We provide coverage to no insureds under this policy if, whether before or after a loss, an insured has:
1. Intentionally concealed or misrepresented any material fact or circumstance;
2. Engaged in fraudulent conduct; or
3. Made false statements;
relating to this insurance.
On October 10, 2012, either one or two fires occurred at the Neidenbachs’ property. There was substantial damage to the house and the personal property within. After the fire, the Neidenbachs claimed coverage under the insurance policy. They submitted a Sworn Statement in Proof of Loss (Proof of Loss) to Arnica, in which they claimed that their house and garage suffered a total loss. They sought the limits of their policy: $375,000 in damage to their house and garage, and $262,500 in damage to their personal property. Attached to the Proof of Loss was an inventory of the Neidenbachs’ personal property, which assigned a value to each item allegedly lost in the fire. According to the inventory, the total value of the personal property lost in the fire was over $300,000, exceeding the policy limit.
Approximately a year before the fire, the Neidenbachs filed for Chapter 13 bankruptcy. In their bankruptcy petition, the Neidenbachs declared—under penalty of perjury—that they jointly owned only $7,000 worth of household goods and furnishings, clothing, furs, jewelry, firearms, hobby equipment, and other personal property. The Neidenbachs do not dispute that they did not accumulate $255,500 worth of personal property between filing the bankruptcy petition and submitting the Proof of Loss.
In April 2013, before Arnica made its final coverage determination, the Neiden-bachs filed the present suit in Missouri state court, seeking reimbursement for the fire loss. Arnica removed the case to federal court, and asserted a counterclaim for recovery of advances it had made to the Neidenbachs under the policy. After the close of discovery, Arnica moved for summary judgment, arguing in part that the insurance policy was void under its “Concealment or Fraud” provision because the Neidenbachs misrepresented the value of their personal property in their Proof of Loss.
The district court concluded that no reasonable jury would be able to reconcile the difference between the value of the person *563 al property the Neidenbachs reported as lost in the fire and the value of personal property they reported in their bankruptcy petition a year earlier. Accordingly, the court determined that the insurance policy was void as a matter of law, and granted summary judgment to Arnica on the Neid-enbachs’ claims. The Neidenbachs appeal that determination. We have jurisdiction under 28 U.S.C. § 1291.
II. Discussion
We review de novo the district court’s grant of summary judgment, viewing the evidence in the light most favorable to the nonmovants. Carpenter v. Gage, 686 F.3d 644, 648 (8th Cir. 2012). Summary judgment is appropriate if “there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.” Fed. R. Civ. P. 56(a).
The Neidenbachs argue that the district court erred in granting summary judgment to Arnica because there is a genuine issue of material fact as to whether they intentionally made material misrepresentations on their Proof of Loss. In the alternative, they argue that the insurance policy is severable, and that the alleged misrepresentations void only the portion of the policy covering their personal property. The parties agree that Missouri substantive law applies.
A. Intentional misrepresentation
The Neidenbachs argue that there is a genuine dispute of material fact as to whether they intentionally misrepresented the value of their personal property in the Proof of Loss. The Neidenbachs reported owning only $7,000 worth of personal property in their bankruptcy petition. However, in their Proof of Loss, they sought reimbursement of $262,500 worth of personal property—a difference of $255,500. As the district court noted, several items listed in the Proof of Loss were not listed in the bankruptcy petition. And many of the items that were listed in the bankruptcy petition were assigned a much higher value in the Proof of Loss than in the petition.
“[I]n the absence of contrary proof,” a verified bankruptcy petition is assumed to be “a true and accurate representation of [the petitioner’s] personal property.” Liberty Mut. Fire Ins. Co. v. Scott, 486 F.3d 418, 423 (8th Cir. 2007). Thus, to survive summary judgment, the Neidenbachs were required to produce evidence from which a reasonable jury could find that “the figures [the Neidenbachs] listed in [their] bankruptcy petition were inaccurate,” that “the insurance proof of loss amounts resulted from mistake or were otherwise inadvertent,” or that some other circumstance accounted for the discrepancies between the bankruptcy petition and the Proof of Loss. Id. According to the Neidenbachs, the discrepancies are attributable to three circumstances.
First, the Neidenbachs contend that they used different methods of valuing their property in the Proof of Loss and the bankruptcy petition. The Neidenbachs state in their affidavits that their bankruptcy attorney instructed them to use the “garage sale value” of their personal property in their bankruptcy petition. For the Proof of Loss, on the other hand, they used the “fair market value” of their personal property. According to the Neiden-bachs, the former refers to “what a willing buyer would pay,” while the latter refers to “what a willing buyer would pay AND what a willing seller would sell it for.” The Neidenbachs contend that this explanation was sufficient to create a genuine issue of material fact as to whether they intentionally overstated the value of their personal property on the Proof of Loss.
*564 We disagree. The facts of this case are closely analogous to those of Scott. In Scott, an insured claimed she had lost $93,077.19 worth of personal property in a fire, less than a year after she listed only $830 worth of personal property in her bankruptcy petition. 486 F.3d at 422. She claimed the discrepancy resulted from the different methods she used to calculate the value of her property: She reported the “actual value” of her property on the bankruptcy petition, and the “replacement cost” of her property on her insurance proof of loss. Id. at 423. Applying Missouri law, we concluded that—even assuming the insured was telling the truth about how she calculated the value of her property—“the vast difference in the two values is still too great to be reconciled based on the record before us.” Id. Here, the $256,500 discrepancy between the Neidenbachs’ Proof of Loss and bankruptcy petition is even greater than the $92,247.19 discrepancy in Scott. And the explanation the Neiden-bachs offer is no more plausible than the one offered by the insured in Scott; if anything, the difference between garage sale value and fair market value is likely to be less than the difference between actual value and replacement cost. Accordingly, no reasonable jury could conclude that the difference between garage sale value and fair market value accounts for a $255,500 discrepancy between the Proof of Loss and the bankruptcy petition.
Next, the Neidenbachs point to Dale Neidenbach’s deposition testimony that their bankruptcy attorney “asked us what we declared on our personal property tax return and that’s the information we gave him” to fill out the bankruptcy petition. As the court understands the argument, the Neidenbachs suggest that they were required to list only some items of personal property on their personal property tax return, and that, therefore, their bankruptcy petition likewise did not include all of their personal property.
But the Neidenbachs have produced no evidence showing what items of personal property they omitted from their personal property tax return. Nor have they cited any authority explaining what personal property is required to be reported on a personal property tax return. Thus, even assuming Dale Neidenbach’s deposition testimony was accurate, we can only speculate as to whether the Neidenbachs owned personal property that was not listed on their personal property tax return. This evidence fails to show more than “some metaphysical doubt as to the material facts.” Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).
Finally, the Neidenbachs argue that because their property suffered a total loss, they were legally entitled to seek coverage up to the policy limits, regardless of their property’s true value. Under Missouri law, where an insured’s personal property is totally destroyed, the measure of damages is the “value fixed at the date of the policy, less depreciation from .that date to time of the fire.” Duckworth v. U.S. Fidelity & Guar. Co., 452 S.W.2d 280, 285 (Mo. Ct. App. 1970); Mo. Rev. Stat. § 379.160. The insured bears the burden of proving that no depreciation has occurred. Duckworth, 452 S.W.2d at 285. The Neid-enbachs’ policy limit for personal property was $262,500; thus, they argue, their claim for a $262,500 loss to personal property was not an intentional misrepresentation.
However, as the district court noted, there is no evidence that the Neidenbachs valued their personal property based on their insurance policy limit. Rather, they both state in their affidavits that they calculated the value of their personal property by determining the fair market value of each item. And, in fact, the total value of *565 the personal property listed in the Proof of Loss far exceeds the policy limit. Accordingly, this argument fails to generate a genuine issue of material fact as to whether the Neidenbachs intentionally misrepresented the value of their personal property in their Proof of Loss.
The Neidenbachs have produced no evidence that they computed the value of their personal property incorrectly on their bankruptcy petition, or that they excluded personal property from the petition because they believed it had no resale value. Cf. Merseal v. Farm Bureau Town & Country Ins. Co. of Mo., 396 S.W.3d 467, 472-73 (Mo. Ct. App. 2013) (concluding the jury’s verdict in favor of the insureds was supported by sufficient evidence where the insureds explained a discrepancy between their insurance claim and bankruptcy petition with evidence that they used a do-it-yourself software program to file for bankruptcy, computed the value of their personal property incorrectly, and excluded some property because they believed it had no resale value). Similarly, the Neid-enbachs have produced no evidence that they made mistakes on their Proof of Loss. Cf. Young v. Allstate Ins. Co., 685 F.3d 782, 785-86 (8th Cir. 2012) (concluding there was a genuine issue of material fact as to whether the insureds intended to deceive the insurance company where the insureds explained a discrepancy between their initial insurance claim and a revised insurance claim with evidence that their daughter prepared the initial claim, and that they did not realize it contained errors until later). Rather, as in Scott, the only reasonable inference from the record before us is that the insureds intentionally made material misrepresentations in their Proof of Loss.
The Neidenbachs make two additional arguments in opposition to summary judgment (though it is somewhat unclear whether these arguments relate to the misrepresentations in the Proof of Loss, or to other misrepresentations the Neiden-bachs allegedly made). Initially, the Neid-enbachs argue that Arnica has failed to show that their misrepresentations were “material” because Arnica has not shown that it was actually prejudiced by the misrepresentations. However, we agree with the district court that the misrepresentations on the Proof of Loss were material because an accurate inventory of the property destroyed by the fire was necessary for Arnica to make a coverage determination. See Myers v. Farm Bureau Town & Country Ins. Co. of Mo., 345 S.W.3d 341, 349 (Mo. Ct. App. 2011) (“[T]he prejudice to [the insurance company] was obvious: the company was being asked to pay a fraudulent claim.”). Next, the Neidenbachs argue in general terms that Arnica relied on inadmissible hearsay in support of its motion for summary judgment. But they do not identify any particular evidence the district court erred in considering. Thus, this argument is not sufficiently developed for appellate review, and we decline to address it.
B. Severability
Before oral argument, we instructed the parties to be prepared to address whether the misrepresentations as to the value of the personal property necessarily voided coverage for the dwelling. The parties submitted supplemental briefing on the issue. The Neidenbachs argue that even if the personal property coverage is void because of the misrepresentations in the Proof of Loss, the coverage for the house and garage is not. Arnica, on the other hand, argues that the policy is void in its entirety.
In Missouri, the interpretation of a contract is a question of law. Schmitz v. Great Am. Assur. Co., 337 S.W.3d 700, *566 705 (Mo. banc 2011). In interpreting insurance contracts, Missouri courts apply “the meaning that would be understood by an ordinary person of average understanding purchasing the insurance.” Id. at 705-06. Any ambiguities are resolved in favor of the insured. Id. at 706. But an unambiguous policy “will be enforced according to its terms.” Id.
Additionally, in Missouri,
[w]here the policy separates the property insured into distinct classes and specifies the amount of insurance upon each, the contract is severable into as many contracts as there are separate classes of property insured on separate valuations, and the fact that the policy may be void as to the insurance on one class will not necessarily impair its validity as to another.
Beckon, Inc. v. AMCO Ins. Co., 616 F.3d 812, 816 (8th Cir. 2010) (quoting Fager v. Commercial Union Assurance Co., 189 Mo. App. 464, 176 S.W. 1064, 1065 (1915)).
However, the parties agree that under Missouri law, where an insured breaches an insurance policy by committing a misrepresentation as to one class of coverage, such misrepresentation may void the entire policy, even if the policy would otherwise be severable. See Childers v. State Farm Fire & Cas. Co., 799 S.W.2d 138, 141 (Mo. Ct. App. 1990) (“Under Missouri case law a misrepresentation as to a portion of the loss may void coverage to the entire claim.”); Scott, 486 F.3d at 423 (finding that where an insured made a material misrepresentation as to the value of her personal property, her entire policy was voided); Patterson v. State Auto. Mut. Ins. Co., 105 F.3d 1251, 1253 (8th Cir. 1997) (concluding that a jury instruction was appropriate under Missouri law where it “allowed forfeiture of all benefits even if the jury found that [the insured] made a material misrepresentation with regard to only one type of coverage provided by the policy”).
As the dissent has thoroughly and persuasively explained, there are Missouri state court cases that have reached the opposite conclusion. See, e.g., State ex rel. Burton v. Allen, 312 Mo. 111, 278 S.W. 772, 775 (1925) (concluding that a jury instruction “declaring that a false and fraudulent representation ... avoids the policy as to other articles insured, is in conflict with the decisions of this court”). Nonetheless, “[a]bsent an intervening opinion by a [state] court,” we are bound by a prior panel’s interpretation of state law. Washington v. Countrywide Home Loans, Inc., 747 F.3d 955, 958 (8th Cir. 2014); see also Mader v. United States, 654 F.3d 794, 800 (8th Cir. 2011) (en banc) (“It is a cardinal rule in our circuit that one panel is bound by the decision of a prior panel.” (quoting Owsley v. Luebbers, 281 F.3d 687, 690 (8th Cir. 2002))). Accordingly, our decisions in Patterson and Scott control our analysis.[2]
*567 Arnica argues that even if the policy might otherwise be severable—which it does not concede—it is not severable in this instance because the Neidenbachs made material misrepresentations during the claims process. The Neidenbachs, on the other hand, argue that this exception to the general severability rule applies only where the language of the policy clearly provides that the entire policy is voided by misrepresentation. The Neiden-bachs contend that the Concealment or Fraud provision of the policy is ambiguous on that point, because it is unclear whether a misrepresentation voids the entire policy, or merely the class of coverage to which the misrepresentation relates. Thus, according to the Neidenbachs, we are required to construe the provision against the insurance provider, and hold that only the personal property portion of the insurance is void.
As described above, the Neidenbachs’ insurance policy states, “We provide coverage to no insureds under this policy if, whether before or after a loss, an insured has ... [intentionally concealed or misrepresented any material fact or circumstance .... ” We find that this provision unambiguously refers to the entire policy, not just the personal property coverage. To begin with, the cover page of the insurance policy document bears the title “Homeowners Policy.” And the policy consistently uses phrases such as “this poli- - cy,” “your policy,” and “the policy” to refer to the entire policy, not just to specific classes of coverage. For example, one portion of the policy reads, “We will provide the insurance described in this policy in return for the premium and compliance with all applicable provisions of this policy.” Thus, an ordinary person of average intelligence purchasing insurance would understand the phrase “this policy” to refer to the entire policy. And the fact that the policy might, in some circumstances, be regarded as severable under Missouri law does not change this plain meaning.
Accordingly, we conclude as a matter of law that because the Neidenbachs intentionally made material misrepresentations on the Proof of Loss, their entire insurance policy is void.
III. Conclusion
We affirm the judgment of the district court.

. The Honorable Charles A. Shaw, United States District Judge for the Eastern District of Missouri.

. It is true that in 1939, an Eighth Circuit panel concluded that, under Missouri law, "[t]he doctrine of separability does not apply where the fraud or untrue representation affects all parts of the insurance contract,” Hesselberg v. Aetna Life Ins. Co., 102 F.2d 23, 26 (8th Cir. 1939) (emphasis added). And, generally, “when faced with conflicting panel opinions, the earliest opinion must be followed ‘as it should have controlled the subsequent panels that created the conflict.’ ” Mader, 654 F.3d at 800 (quoting T.L. ex rel. Ingram v. United States, 443 F.3d 956, 960 (8th Cir. 2006)). But in this instance, we conclude that Patterson and Scott implicitly overruled Hes-selberg on the basis of an intervening state court opinion. See Scott, 486 F.3d at 423 (citing Childers, 799 S.W.2d at 141); Patterson, 105 F.3d at 1253 (same). Because a prior panel’s interpretation of state law is binding only in the absence of an intervening state court opinion, Patterson and Scott were not *567 obligated to follow Hesselberg. But until a Missouri state court issues an intervening opinion on this point, we are obligated to follow Patterson and Scott.